**TEXAS DEPARTMENT OF CRIMINAL JUSTICE,**
Appellant

v.

**Lori HAWKINS, Individually and as Administratrix of the Estate of Aubrey Wright Hawkins, Deceased; Dixie Buchanan, Natural Mother and as Next Friend of Andrew Hawkins, A Minor Son of Aubrey Hawkins, Deceased; Jayne Hawkins, Individually; and Curtis Hawkins, Individually; Appellees.**

No. 05–03–01780–CV.

Court of Appeals of Texas, Dallas.

Aug. 12, 2005.

Kimberly Kay Coogan, Asst. Atty. Gen., Austin, for Appellant.

Robert Shaw Macintyre, Richard Warren Mithoff, Mithoff & Jacks, LLP, Herrick L. Sovany, William J. Stradley, Dick DeGuerin, DeGuerin & Dickson, Houston, for Appellee.

Before Justices O'NEILL, LANG, and LANG–MIERS.

## OPINION

Opinion by Justice O'NEILL.

This case is brought against the Texas Department of Criminal Justice (TDCJ) by the family of Officer Aubrey Hawkins. The TDCJ filed a plea to the jurisdiction, asserting that its sovereign immunity was not waived under the Texas Tort Claims Act (TTCA). The trial court denied the TDCJ's plea. Because we conclude immunity was not waived under the TTCA, we vacate the trial court's order denying the plea and render judgment for TDCJ dismissing the cause of action.

## Facts

The facts as pleaded by the Hawkins family tell the story of how seven inmates (the Seven) escaped from the Connally Unit in Huntsville, commandeered at least 14 of the state's weapons in the back tower, escaped through the back gate, and 11 days later and 300 miles away, used the weapons to kill Officer Aubrey Hawkins when he attempted to apprehend them. The facts alleged in the Hawkins's petition are largely taken from the report of the official investigation of the escape. On December 13, 2000, six of the seven prisoners were left unsupervised in the maintenance area during lunch and during a "major count" of inmates. They obtained "sensitive" tools, meaning tools that might be used to effect an escape or that pose a threat to prison security. They bound certain TDCJ personnel in the electrical room. When the employees broke free, they set off the fire alarm. The signal went off in the central control tower, but the guard in the control room silenced the alarm without alerting anyone.

Familiar with prison procedures, the prisoners called in their presence during the "major count." During the course of the escape, they commandeered state-employee uniforms. They called the back-tower officer to alert him to the arrival of a maintenance worker, who was actually one of them. A first group of offenders was not asked for proper identification and was let through a back gate. At the back tower, the guard did not ask an approaching offender for proper identification, and the offender entered the tower through the open trap door. The officer had unholstered his weapon and left it on a desk. The offender stole the weapon. The back tower was used to store weapons for field and transportation officers, although it was not designed for that use. From the tower, the offenders obtained 13 additional

weapons, all .357 Magnum revolvers. The Seven escaped in a maintenance worker's pickup, through an open gate.

Eleven days later, on Christmas eve, the Seven robbed an Oshman's store in Irving, Texas. Office Hawkins responded and intercepted the Seven in the parking lot. Using the weapons they had commandeered in the prison tower, they fired at Hawkins, killing him.

Hawkins's wife, son, and parents sued the TDCJ, alleging negligence. The TDCJ filed a plea to the jurisdiction, asserting sovereign immunity. The trial court denied the plea, without giving reasons. TDCJ brought this interlocutory appeal, as authorized under the civil practice & remedies code. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon 2005).

## Standard of Review and Applicable Statute

Governmental immunity from suit defeats a trial court's subject-matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Tex. Dept. of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex. 1999). The existence of subject-matter jurisdiction is a question of law; thus, we review de novo the trial court's ruling on a plea to the jurisdiction. *Tex. State Employees Union/CWA Local 6184 A.F.L.C.I.O. v. Tex. Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex.App.-Austin 2000, no pet.).

Plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). In our review, we must construe the pleadings in favor of the plaintiff and look to the pleader's intent. *Id.* The court is required to construe liberally the allegations in favor of jurisdiction unless, on its face, the petition affirmatively demonstrates a lack of

jurisdiction. *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804 (Tex.1989).

In Texas a governmental unit is immune from tort liability unless the legislature has waived immunity. *Dallas County Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex.1998) Thus, whether a governmental unit is immune from liability for a particular claim depends entirely upon the applicable statute. *Id.*

The Texas Tort Claims Act (TTCA) provides a limited waiver of governmental immunity when "use" of property is involved. TEX. CIV. PRAC. & REM CODE §§ 101.001–.109 (Vernon 2005). The "use" provision reads as follows:

> A governmental unit in the state is liable for ... personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2).

Thus, immunity is waived if injury or death is caused by a "condition or use of tangible personal or real property." Our task is to determine whether the Hawkins family has pleaded a claim that falls within that provision. They assert waiver of immunity based on the state actors' mishandling of the weapons, including the guard's alleged misuse of property by unholstering his sidearm and the alleged negligent use of the tower to store weapons.

## TDCJ's Arguments

TDCJ argues that the circumstances do not constitute a "condition or use" of tangible personal or real property sufficient under the statute to effect waiver, as illustrated in *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246–47 (Tex.2004) and *Tex. A & M Univ. v. Bishop*, 156

S.W.3d 580 (Tex.2005). They argue the TDCJ did not provide the weapons to the escapees, but rather they were stolen. Also, the guns were used to kill Hawkins, not by any TDCJ employee, but by the escapees. Further, they assert, the statute's "proximate cause" requirement is not met, as construed in *Bossley*, 968 S.W.2d at 343. They argue the government's involvement with the subject property was too remote "geographically, temporally, and causally" to have proximately caused Hawkins' injury and death. *Id.; see San Antonio State Hosp. v. Koehler*, 981 S.W.2d 32, 36 (Tex.App.-San Antonio 1998, pet. denied) (hole in fence through which patient escaped could not be proximate cause of later rape).

We conclude that, under the facts as pleaded, the TDCJ did not "use" the weapons within the meaning of the TTCA's waiver of governmental immunity. We further conclude that the factual allegations in this case cannot meet the proximate-cause requirement under the statute.

**The TTCA's "Use" Provision**

▮ The Texas Supreme Court has determined that immunity is waived only when the "use" is by the governmental unit itself. *Cowan*, 128 S.W.3d at 245–46. Cowan was involuntarily committed to the state hospital after exhibiting suicidal tendencies. The hospital employees took possession of his personal effects, except they allowed Cowan to keep his suspenders and walker, which he used to kill himself. *Id.* at 245. The court reiterated the definition of "use" in this context as meaning "to put or bring into action or service; to employ for or apply to a given purpose." *Id.* at 246. "A governmental unit does not 'use' personal property merely by allowing someone else to use it and nothing more." *Id.* The court distinguished from the waiver of immunity in *Overton Memorial Hospital v. McGuire*, 518 S.W.2d 528 (Tex.

1975). The plaintiff in *McGuire* alleged he was injured when he fell out of his hospital bed, which was not equipped with side rails. The *Cowan* court noted, "The hospital did not merely allow the patient access to the bed; it actually put the patient in the bed as part of his treatment." *Id.* at 246.

The supreme court recently reaffirmed the constricted meaning of "use" in *Bishop*, 156 S.W.3d 580. Bishop was a student actor in a voluntary drama club, which had two faculty advisors. Bishop was accidentally stabbed with a knife when a fellow actor missed the stab pad during a performance. Both the stab pad and knife were chosen and supplied by the director and his assistant, who were independent contractors.

The court held that the faculty advisors' alleged negligent supervision concerning the props did not constitute a "use" of tangible personal property under the TTCA. *Id.* at 581. In reaching this conclusion, the court stated that, to the extent Bishop had asserted that the faculty had negligently "allowed" the director to provide the knife, "such negligent supervision, without more, does not constitute a 'use' of personal property" that would waive immunity. *Id.* at 583.

In today's case, the Hawkins family alleges that the guard negligently "misused" his weapon by unholstering it and the tower was "misused" as a weapons depot. We conclude this alleged "use" by the TDCJ amounts to no more than allowing access to the weapons. As in both *Cowan* and *Bishop*, merely allowing access to property does not constitute "use" by a governmental unit so as to effect waiver under the TTCA.

**The TTCA's Causation Requirement**

▮ In addition, the TTCA's "use" provision requires that the personal injury

or death be "caused" by a condition or use of tangible personal or real property. TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2). The *Bossley* Court instructed that "proximate cause" is required. 948 S.W.2d at 343. The traditional proximate-cause elements are cause in fact and foreseeability. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992). "Cause in fact" means the act or omission was a substantial factor in bringing about the injury and, without it, harm would not have occurred. *Id.* "Foreseeability" means that the actor, as a person of ordinary intelligence, should have anticipated the dangers his or her negligent act created for others. *Id.*

In *Bossley*, the court concluded the causation requirement was not met. 968 S.W.2d at 343. After a suicide attempt, Roger Bossley was committed to Parkland Hospital and later Hillside Treatment Center. For two weeks he seemed to be recovering from his severe depression when, in reaction to a comment by a counselor, he asked another patient where he could get a gun to kill himself. He was ordered to be returned to the more restrictive environment of Parkland. Because patients often try to elope to avoid transfer, the front door was locked, although the self-locking glass doors just inside the front door were left open. *Id.* at 340–41.

The next day, a staff person noticed Roger at the telephone near the doors as she left. She passed through the open glass doors, looked around, and seeing no one, opened the front door. As she did, Roger rushed from behind, pushed her aside, and fled. He fled to Interstate 30, where he attempted to hitchhike from both sides of the freeway. When approached by Hillside personnel and police, he leaped into the path of an oncoming truck and was killed. *Id.* This occurred about a half mile from the facility and in a "fast-paced and continuous sequence." *Id.* at 345.

The court stated the statute requires that the injury or death must be "proximately caused" by the condition or use of tangible property. *Id.* at 343. "Property does not cause injury if it does no more than furnish the condition that makes the injury possible." *Id.* (citing *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex. 1995)). The court concluded, "Although Roger's escape through the unlocked doors was part of a sequence of events that ended in his suicide, the use and condition of the doors were too attenuated from Roger's death to be said to have caused it." *Id.*

In reaching this conclusion, the Court distinguished from the "use" deemed to have waived immunity in *McGuire*, when a patient was put into a bed without rails. The *Bossley* court reasoned that the injury in *McGuire* was "immediate and directly related to" the absence of bedrails, but that "Roger's death was distant geographically, temporally, and causally from the open doors at Hillside." *Id.*

■■■ Thus in *Bossley*, the Court determined, for the purposes of causation, the death occurring within a half mile and shortly after the escape was both temporally and geographically distant. In today's case, the injury occurred 11 days later and 300 miles away from the state employee's alleged misuse of the property. *Bossley* makes clear that causation under the statute includes an element of immediacy. *Id.* We hold that the injurious use of the state-issued property 11 days after the escape and 300 miles away was too remote to satisfy the proximate-cause requirement of the "use" provision of the TTCA.

Accordingly, we conclude that the facts as pleaded fail to establish waiver of im-

munity under section 101.021(2) of the Texas Tort Claims Act. Thus, the pleadings fail to establish that the trial court has subject-matter jurisdiction in this case. We **REVERSE** the trial court's order denying TDCJ's plea to the jurisdiction and **RENDER** judgment for TDCJ dismissing the Hawkins' cause of action against it.