**Brenda MANN By and Through Belinda Mann TERRAZAS, Individually and in her Representative Capacity on Behalf of the Estate of Brenda Mann, Graciella Mann, and Paul Mann, Sr.; David Polk, Jr., by and through David Polk, Sr., Individually and in his Representative Capacity on Behalf of the Estate of David Polk, Jr., and Sharon Tyrone, Plaintiffs,**

v.

**Ralph LOPEZ, Bexar County Sheriff, In his Official and Individual Capacities, Unknown Unnamed Officers of the Bexar County Sheriff's Office, Individually and Officially, Defendants.**

No. Civ.A. SA05CA0527XR.

United States District Court,
W.D. Texas,
San Antonio Division.

Oct. 11, 2005.

Patrick J. Filyk, Edward L. Pina, Attorney at Law, Law Office of Patrick John Filyk The Ariel House, San Antonio, TX, Dan L. Carabin, Law Office of Dan Carabin, San Antonio, TX, for Brenda Mann.

Sue Ann Gregory, Attorney's Office, San Antonio, TX, for Ralph Lopez.

## ORDER

RODRIGUEZ, District Judge.

Before the Court is Defendants' "motion for summary judgment and/or motion to dismiss" (docket no. 3).

### Background

David Polk, Jr. was arrested for murder and "booked" into the Bexar County Adult Detention Center on May 22, 2003. At the time of this arrest, he was 21 years of age.

He had been previously incarcerated at this facility on an intermittent basis since at least June of 2000. During one incarceration in January 2001, Polk was classified as "mental" for placement and observation purposes. In March 2002, he expressed that he thought that an inmate was trying to kill him. On April 21, 2002, Polk, who was upset at the recent loss of his three children in a motor vehicle accident, asked an inmate for a razor blade so that he could kill himself. At that time he was relocated to a special cell and referred to a mental health specialist.

At the time of his May 2003 arrest, Polk's records reflect that on May 23, 2003 he was known to be "mental" and "may house on 6th floor psych." In addition to a capital murder charge, Polk was also facing a robbery and sexual assault charge. Polk's records also reflect that because of the sexual assault charge and his "disruptive" behavior that an escort would be needed any time Polk exits the unit.

When Polk was "booked" into the jail, he was interviewed by both jail/detention staff and medical staff from the Detention Health Care Services—University Health System. Polk's May 2003 "inmate management information system" records indicate that he had previously been hospitalized in a mental hospital for paranoid schizophrenia. On May 23, 2003, Polk denied thinking about suicide since being booked into jail. He also stated that he did not want to see a mental health social worker. A comment was also included in the record that Polk was "currently housed in the mental health unit. Inmate requires and [sic] escort when leaving the unit. Inmate is pending further review by the classification manager and is to remain in the mental health unit." At no time in May or June 2003 did the detention or medical staff determine that Polk was at risk for suicide. Polk was housed in a mental health unit that provides for a 1 to 18 officer to inmate ratio. The Texas Commission on Jail Standards mandates a 1 to 48 officer to inmate ratio.

On June 6, 2003, at approximately 1 a.m., Polk committed suicide in Mental Health Unit cell # 5. The autopsy report indicates the cause of death was asphyxia by hanging. Evidently Polk used some form of "string" made from a torn-up bed sheet and fastened the "string" to a light fixture.

Brenda Mann was arrested for prostitution and "booked" into the Bexar County Adult Detention Center on September 30, 2004. At the time of her arrest she was 19 years of age. When Mann was "booked" into the jail, she was interviewed by both jail/detention staff and medical staff from the Detention Health Care Services—University Health System.

Her "inmate management information system" indicated that she was "detoxing from heroin." During her intake interview she denied having been in counseling sessions for mental or emotional problems. She, however, did state that she had previously been a patient in a mental hospital in February 2003 for suicidal thoughts.[1] She denied having thought about suicide "since being booked into jail." The medical staff determined that she was stable and not a risk for suicide. Mann also stated that she did not want to "see a mental health social worker."

On October 4, 2004, Mann informed jail officials that she wanted to speak to detectives about her knowledge of a murder. After she was interviewed, she indicated to jail officials that she was in fear for her safety because she gave law enforcement officers "info on the Mexican Mafia." She was relocated to a new detox cell. On October 4, 2004, at approximately 2355 hours Mann was visually seen by a guard and she appeared "normal." At 2359 hours (four minutes later), Mann was seen hanging in her cell. The autopsy report indicates the cause of death was asphyxia by hanging. Mann tied a bed sheet around one of the bars in her cell.

According to a Report completed by the Texas Commission on Jail Standards to the Texas Legislature dated December 2004, Bexar County reported two suicides in 1999, one in 2001 and one in 2003 (Polk). As indicated above, Mann committed suicide in 2004. Accordingly, there have been at least five suicides in the Bexar County Adult Detention Facility since 1999.

### Plaintiffs' Allegations

Plaintiffs bring suit against the Bexar County Sheriff in his official and individual capacities. They allege that the Sheriff "has repeatedly failed and refused to adequately supervise and train his agents, employees, and officers and this has resulted in Brenda Mann and David Polk, Jr. not being monitored in a reasonable manner after the decedents informed jail staff of their intent to commit suicide. Moreover, the Sheriff has failed and refused to assure that holding cells utilized for detainees with suicidal tendencies were suitable for such purposes." Plaintiffs allege that "the Sheriff's actions and inactions demonstrate a deliberate indifference to these pre-trial

---

1. On March 5, 2003, Bexar County Probate Court Judge Polly Jackson Spencer entered an Order for Protective Custody for Mentally Ill Person. The Application for Temporary Commitment for Mental Illness stated that Mann had made a superficial cut to her wrist attempted to overdose on cocaine. The application also references that Mann attempted to hang herself on another occasion. She was discharged from the San Antonio State Hospital on March 7, 2003. She was prescribed Lorazepam for anxiety. It is unknown whether the Bexar County jail authorities were aware of the March 5, 2003 Order for Protective Custody or the San Antonio State Hospital records in September/October 2004. Mann's September 30, 2004 Detention Health Report states Plaintiff acknowledged attempting suicide in 2003 because of a breakup with her boyfriend. Mann denied any current suicidal thoughts.

detainees' constitutional right to reasonable care and supervision. . . . The Sheriff's deliberate indifference under these circumstances is tantamount to cruel and unusual punishment without due process of law." Plaintiffs allege that the then existing "policies, procedures and training were so inadequate that they had in the past failed to prevent suicides." Further, they allege that the Sheriff "has steadfastly failed, refused, or neglected to fully and properly investigate the other custodial deaths. . . ." Finally, Plaintiffs allege that the Sheriff failed to investigate and/or discipline the officers and employees involved in or responsible for Mann and Polk's deaths.

Plaintiffs bring suit alleging violations of the Texas Tort Claims Act, Tex. Civ. Prac. & Rem.Code §§ 101.001, et seq., the Texas Wrongful Death Act, Tex. Civ. Prac. & Rem.Code §§ 71.001, 71.021 et seq. and 42 U.S.C. §§ 1983 and 1986. Plaintiffs allege that the Sheriff grossly violated jail standards and this constitutes an official policy, practice or custom of the Sheriff's office. Further, Plaintiffs allege that the Sheriff violated the decedents' right to life, companionship and association, without due process, in violation of the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

### Analysis

**A. Qualified Immunity with respect to claims asserted against Sheriff Lopez in his individual capacity**

■ Evaluating qualified immunity is a two-step process. First, a court determines whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right. "A right is clearly established if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.' If the plaintiff has alleged a violation of a clearly established right, the next step . . . is to determine whether the official's conduct was objectively reasonable under the law at the time of the incident. The plaintiff bears the burden of proving that a government official is not entitled to qualified immunity." *Michalik v. Hermann*, 422 F.3d 252 (5th Cir.2005).

■ Regarding the first inquiry, the plaintiffs have stated a claim under currently applicable law for the denial of the decedents' substantive due process rights. "A pretrial detainee's due process rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Jacobs v. West Feliciana Sheriff's Dept.*, 228 F.3d 388, 393 (5th Cir.2000). The plaintiffs have alleged that the Sheriff and other unnamed defendants [2] were deliberately indifferent to the decedents' need for protection from self-inflicted harm. "It is well-settled in the law that 'a state official's episodic act or omission violates a pretrial detainee's due process rights to medical care [and protection from harm] if the official acts with subjective deliberate indifference to the detainee's rights.' By alleging deliberate indifference to [the decedents'] clearly established Fourteenth Amendment rights, the plaintiffs have cleared the first hurdle in defeating the defendants' qualified immunity defense." *Id.*

Accordingly, the Court next turns to whether Sheriff Lopez's conduct was objectively unreasonable. Although other unnamed defendants are alleged to have contributed to the two deaths in this case, the Court examines each individual defendant's entitlement to qualified immunity separately. *Id.* at 395.

---

**2.** Although this suit was filed on June 3, 2005, Plaintiffs actually reference other jail officials in their complaint, and discovery has been undertaken, Plaintiffs have never amended their complaint to identify the unnamed defendants and effectuate service.

Plaintiffs allege that Sheriff Lopez failed to adequately supervise and train officers and this failure resulted in Mann and Polk not being monitored in a reasonable manner after they informed jail staff of their intent to commit suicide. Plaintiffs further allege that Sheriff Lopez failed to assure that the holding cells utilized for detainees with suicidal tendencies were suitable for such purposes. Plaintiffs allege that the Sheriff knew that his policies, procedures and training were inadequate because they had in the past failed to prevent suicides at the jail. Finally, Plaintiffs allege that the Sheriff failed to discipline officers involved in these two incidents.

■ Unlike *Jacobs v. West Feliciana Sheriff's Dept.*, there is no evidence that indicates that Sheriff Lopez was personally aware that Polk and Mann contemplated suicide in 2002. Also there is no evidence that Sheriff Lopez personally was aware of any suicidal thoughts either of them may have had during their final incarceration. Sheriff Lopez did not personally direct any actions involving Mann or Polk during their incarceration. In this case Plaintiffs proceed against Sheriff Lopez in his individual capacity by merely arguing that he failed to adequately supervise and train officers, failed to assure that holding cells were suitable, and continued to rely upon allegedly deficient policies and procedures. Pursuant to *Jacobs v. West Feliciana Sheriff's Dept.*, to defeat qualified immunity the Plaintiffs "must establish that the officers in this case were aware of a substantial and significant risk that [Mann and Polk] might kill [themselves], but effectively disregard it." *Id.* at 395. "It is well-settled ... that negligent inaction ... does not violate the due process rights of a person lawfully held in custody of the State." *Id. See also Forgan v. Howard County*, 2005 WL 233808 (N.D.Tex. Feb. 1, 2005)("Actions and decisions by officials that are merely inept, erroneous, ineffec-tive, or negligent do not amount to deliberate indifference and thus do not divest the official of qualified immunity.").

Defendant Sheriff Lopez's motion to dismiss the section 1983 claims against him in his individual capacity, based upon qualified immunity, is GRANTED.

**B. Section 1983 Claims against the Sheriff in his official capacity**

Plaintiffs claim that Bexar County, through the actions of its Sheriff, were deliberately indifferent to Mann's and Polk's constitutional rights by promulgating inadequate policies and procedures or in the training and supervising of employees in ways that inadequately addressed potentially suicidal inmates' basic health and safety needs.

The Bexar County Sheriff's Office promulgated a policy and procedure titled "Suicide Prevention Plan" in 1990. The Plan was revised in 1996. The plan requires that inmates be screened during intake into the jail for any signs of suicidal tendencies. Intake staff are required to utilize an Initial Risk Assessment Form to identify any immediate needs. When a staff member discovers an inmate exhibiting unusual behavior, depression or a possibility of suicidal intent, the staff member is required to immediately notify mental health personnel. Suicidal inmates are to be assigned to housing units that "best provide for their observation, level of custody and treatment." The policy warns that "Unit Officers must know [placement in a detoxification unit] may be a high risk for inmates to attempt suicide."

In addition to the above plan, the Sheriff's Office has also promulgated a policy and procedure titled "Suicide Surveillance." The policy was adopted in 1990. The policy requires that any staff member who becomes aware that an inmate has expressed suicidal thoughts contact the

mental health counselor immediately. A policy titled "Reporting Bizarre and Unusual Behavior of Inmates" adopted in 1992 and revised in 1995 also requires staff to report inmates who exhibit unusual or bizarre behavior. Finally, the Sheriff's Office adopted in 1990 and revised in 1997 a policy titled "Initial Risk Assessment" which requires that during the intake process a series of questions be asked "to help provide for the individual's safety and protection while in the facility." Among the questions to be asked are questions that probe into suicide potential.

Plaintiffs argue that given that suicides have occurred despite the above policies, the Sheriff's continued use of these "failed" policies violated the decedents' constitutional rights. Plaintiffs rely upon *Rhyne v. Henderson County*, 973 F.2d 386 (5th Cir.1992) for its position. In *Rhyne*, Paul Morrow was arrested on May 30, 1986. The following morning he was found hanging semiconscious from cell bars by a make shift rope he had fashioned from a jail blanket. He was taken by ambulance to a hospital. When he awoke he informed his mother he would attempt to kill himself again. When he was returned to the county jail his clothes were removed except for his underwear, and he was placed in a cell where he could be watched. The blankets were removed from his cell. He was later transferred to a different cell and placed in a straight jacket. Later he was able to remove the straight jacket and attempted to hang himself with the jacket. Some time later he was again moved to a different cell that could not be seen from the front desk, given a blanket by another

officer because he appeared cold in his underwear and he successfully killed himself by using strips of the blanket to fashion a rope. In a concurring opinion, Judge Goldberg wrote: "Showing some concern for those in custody, by taking limited steps to protect them, will not pass muster unless the strides taken to deal with the risk are calculated to work: Employing only meager measures that jailers and municipalities know or should have known to be ineffectual amounts to deliberate indifference." *Id.* at 396.

It is settled law that a "municipal policy maker's failure to adopt a precaution can be the basis for section 1983 liability, [but] such an omission must amount to an intentional choice, not merely an unintentionally negligent oversight." *Id.* at 392. "The Supreme Court has held that municipal failure to adopt a policy does not constitute such an intentional choice unless it can be said to have been 'deliberately indifferent.' A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Id.* As indicated above, the Bexar County Sheriff's Office had implemented various policies concerning potentially suicidal inmates. Accordingly, it appears that the questions in this case is whether the Sheriff's failure to modify his policies was an intentional choice, and not merely "an unintentionally negligent oversight" and whether the Sheriff was "deliberately indifferent." This standard is oftentimes difficult for Plaintiffs to overcome. *See Evans v. City of Marlin, Texas*, 986 F.2d 104 (5th Cir. 1993); *Jones v. Throckmorton County*, 2004 WL 419811 (N.D.Tex.2004).[3] Never-

---

3. Plaintiffs ... claim that Throckmorton County, through its sheriff, John Riley, and Shackelford County, through its sheriff, Richard Wagman, were deliberately indifferent to a violation of Casey's constitutional rights by promulgating policies and procedures or in the training and supervising of employees in ways that inadequately addressed potentially

suicidal inmates' basic health and safety needs. Plaintiffs may recover against either county under § 1983 if they can show that some county policy or customary procedure caused its officials to deprive Casey of reasonable medical care for or protection from his own suicidal tendencies.... This Court can

theless, the Court notes that *Evans* and *Jones* were not disposed of pursuant to a motion to dismiss, but rather were dismissed after the filing of a motion for summary judgment. The claims in *Rhyne* were dismissed after the filing of a motion for directed verdict.

■ In this case, although the Defendants have titled their motion as a motion for summary judgment, it is unclear whether they have sought summary dismissal on this particular claim. Further, it is unclear whether discovery has been conducted on the claim that the Sheriff's failure to modify his policies was an intentional choice, and not merely "an unintentionally negligent oversight" and whether the Sheriff was "deliberately indifferent." [4] Defendants' motion to dismiss the Section 1983 claims against the Sheriff in his official capacity is DENIED, but after an

adequate time for discovery has elapsed the Court will consider a motion for summary judgment on this issue.

## C. Are Mann's claims under the Texas Tort Claims Act barred for failure to provide notice?

Tex. Civ. Prac. & Rem.Code § 101.101 states:

(a) A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:

(1) the damage or injury claimed;

(2) the time and place of the incident; and

(3) the incident.

(b) A city's charter and ordinance provisions requiring notice within a charter

---

find no basis for such a claim against Throckmorton County; but as to Shackelford County, Plaintiffs contend that a genuine issue of material fact exists as to whether Shackelford County acted with deliberate indifference in establishing a mental disabilities and suicide prevention plan that did not require consultation with mental health experts, and in failing to adequately train its jailers regarding its mental health and suicide prevention policy. However, to succeed in their claim, Plaintiffs must first show a violation of Casey's constitutional rights. "Congress did not intend municipalities [or counties] to be held liable unless deliberate action attributable to the municipality [or county] directly caused a deprivation of federal rights." Because all the claims for subjective deliberate indifference to Casey's constitutional rights against Defendants in their individual capacities fail, no underlying constitutional violation exists to implicate any existing policy or procedure. Despite the evident tragedy of what occurred, it is nevertheless true that "not every unfortunate incident constitutes a constitutional deprivation, nor reflects official policy, nor is compensable." Consequently, Throckmorton and Shackelford counties are entitled to summary judgment on the issue of municipal liability for the § 1983 claims.

4. The Defendants may be arguing for summary judgment on this point. They contend that there is no evidence that jail or medical staff were aware of any suicide plans made by either decedent during their last incarceration. The Defendants further argue that there is no evidence that any Texas Commission on Jail Standards policy or other governmental regulation was violated. Plaintiffs appear to be arguing that a fact issue exists as to whether Polk vocalized a suicide threat and attach a newspaper article claiming that Polk made such a threat. Defendants object to this article as hearsay. The Court sustains that objection. Despite the above, Defendants fail to adequately address why the existing policies were adequate, whether they are periodically reviewed, and fail to affirmatively state in any affidavit that the policies in place met or exceeded TDJS requirements. Plaintiffs appear to merely rely on the fact that both decedents had previously made suicidal threats, but fail to address with any evidence what obligations, if any, should be imposed upon a county jail when it "books" an inmate who has expressed suicidal thoughts in the past.

period permitted by law are ratified and approved.

(c) The notice requirements provided or ratified and approved by Subsections (a) and (b) do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged.

■ Defendants seek dismissal of Mann's claims for failure to provide notice. However, Defendants make no reference to section 101.101(c) which excludes the notice requirement if the governmental unit had actual notice of Mann's death. The Sheriff's Office and jail officials conducted a complete and thorough investigation of Mann's death immediately. Statements were taken from the jailers who were on duty, an autopsy was performed and the Sheriff had actual notice of the death. Defendants' motion for dismissal on this point is DENIED. *Mutrux v. Cameron County, Tex.*, 809 F.Supp. 510 (S.D.Tex.1992).

### D. Texas Tort Claims Act

Tex. Civ. Prac. & Rem.Code § 101.021 states:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

■ In Texas a governmental unit is immune from tort liability unless the legislature has waived immunity.... The Texas Tort Claims Act (TTCA) provides a limited waiver of governmental immunity when "use" of property is involved. Tex. Civ. Prac. & Rem Code §§ 101.001–.109 (Vernon 2005). The "use" provision reads as follows: A governmental unit in the state is liable for ... personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law. Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2). Thus, immunity is waived if injury or death is caused by a "condition or use of tangible personal or real property." *Texas Dept. of Criminal Justice v. Hawkins,* 169 S.W.3d 529, 532 (Tex.App.—Dallas 2005, no pet. h.).

In *San Antonio State Hosp. v. Cowan,* 128 S.W.3d 244 (Tex.2004), the Texas Supreme Court considered whether merely providing someone with personal property that is not itself inherently unsafe is a "use" within the meaning of the Tort Claims Act. Cowan was involuntarily committed to the San Antonio State Hospital because of his psychotic behavior, acute depression, and suicidal tendencies. The Hospital allowed Cowan to keep his suspenders and walker. Two days later, Cowan used his suspenders and a piece of pipe from the walker to commit suicide. The Court concluded that a "governmental unit does not 'use' personal property merely by allowing someone else to use it and nothing more. If all 'use' meant were 'to make available', the statutory restriction would have very little force. As difficult as the restriction has been to construe, it was clearly intended as a real limit on the waiver of sovereign immunity. Respon-

dents assert only that the Hospital gave Cowan his walker and suspenders; they do not allege that the Hospital put the suspenders and walker into service or employed them for a given purpose.. By providing Cowan his walker and suspenders, the Hospital did not 'use' them within the meaning of section 101.021(2).... Because respondents failed to allege that Cowan's death was caused by the Hospitals use of property, its immunity is not waived by section 101.021(2)." *Id.* at 246.

▮ In the case herein, the jail merely provided a bed sheet to Mann and Polk, which was thereafter altered by them to fashion a rope which was affixed to a light fixture and a bar. Pursuant to *Cowan*, the jail did not use the bed sheet, light fixture or bar within the meaning of section 101.021(2) and immunity is not waived by section 101.021(2). Defendants' motion to dismiss the Plaintiffs' Tort Claims Act is GRANTED.

### E. Wrongful Death Claim, Tex. Civ. Prac. & Rem.Code §§ 71.001, et seq.

▮ Defendants argue that Bexar County cannot be sued for wrongful death under the Wrongful Death Act. The Wrongful Death Act sets forth the circumstances under which a "person" may be liable for an injury that causes an individual's death. See Tex. Civ. Prac. & Rem. Code Ann. § 71.002 (Vernon 1997). The word "person" is specifically defined to include "an individual, association of individuals, joint-stock company, or corporation or a trustee or receiver of an individual, association of individuals, joint-stock

company, or corporation." Tex. Civ. Prac. & Rem.Code Ann. § 71.001(2) (Vernon 1997). The term "corporation" is further defined to exclude "... a county or a common or independent school district." Tex. Civ. Prac. & Rem.Code Ann. § 71.001(1) (Vernon 1997). "Thus, the plain wording of the statute makes it clear that a county may not be sued for wrongful death under the Wrongful Death Act." *County of El Paso v. Dorado,* 33 S.W.3d 44 (Tex.App.—El Paso 2000, no pet.). *See also Clark v. Johnson County,* 2002 WL 500858 (N.D.Tex. Mar. 27, 2002). Defendants' motion to dismiss the Plaintiffs' Wrongful Death Act claims is GRANTED.[5]

### Conclusion

Defendant Sheriff Lopez's motion to dismiss the section 1983 claims against him in his individual capacity, based upon qualified immunity, is GRANTED. Because it is unclear whether Defendants have sought summary dismissal on the claim that the Sheriff's failure to modify his policies was an intentional choice, and not merely "an unintentionally negligent oversight" and whether the Sheriff was "deliberately indifferent," Defendants' motion to dismiss the Section 1983 claims against the Sheriff in his official capacity is DENIED, but after an adequate time for discovery has elapsed the Court will consider a motion for summary judgment on this issue. Defendants' motion to dismiss the Texas Tort Claims Act claims brought by Mann because of failure to provide notice is DE-

---

5. Because the Court has dismissed Plaintiffs' Wrongful Death Act claims, the Court need not address Defendants argument that Plaintiffs' Wrongful Death Act claims are barred as a matter of law because the decedents' deaths were caused by suicide. "In a civil action for wrongful death, a defendant can plead and prove suicide as an affirmative defense. This defense succeeds only if: the plaintiff's con-

duct was the sole cause of the damages sustained; provided, however, if the suicide was caused in whole or in part by a failure on the part of any defendant to comply with an applicable legal standard, then such suicide or attempted suicide shall not be a defense." *Evans v. City of Marlin, Tex.,* 986 F.2d 104, 109 (5th Cir.1993).

NIED. Defendants make no reference to section 101.101(c) which excludes the notice requirement if the governmental unit had actual notice of Mann's death. The Sheriff's Office and jail officials conducted a complete and thorough investigation of Mann's death immediately. Statements were taken from the jailers who were on duty, an autopsy was performed and the Sheriff had actual notice of the death. Nevertheless, the Texas Tort Claims Act claims brought by both Plaintiffs are dismissed because in this case, the jail merely provided a bed sheet to Mann and Polk, which was thereafter altered by them to fashion a rope which was affixed to a light fixture and a bar. Pursuant to *Cowan*, the jail did not use the bed sheet, light fixture or bar within the meaning of section 101.021(2) and immunity is not waived by section 101.021(2). Finally, Tex. Civ. Prac. & Rem.Code Ann. § 71.001(1) makes it clear that a county may not be sued for wrongful death under the Wrongful Death Act. Accordingly, Defendants' motion to dismiss the Plaintiffs' Wrongful Death Act claims is GRANTED.