**Affirm and Opinion Filed August 27, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-01141-CV

### CITY OF SAGINAW, TEXAS, Appellant
### V.
### BRANDON CRUZ, Appellee

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-19227**

## MEMORANDUM OPINION
Before Justices Schenck, Partida-Kipness, and Nowell
Opinion by Justice Partida-Kipness

In this interlocutory appeal, the City of Saginaw contends the trial court erred in denying its plea to the jurisdiction. In seven issues, Saginaw broadly contends (1) appellee Brandon Cruz failed to demonstrate that Saginaw's governmental immunity was waived under the Texas Tort Claims Act (TTCA) and (2) the trial court abused its discretion in denying Saginaw's motion to amend admissions that would have denied the trial court's jurisdiction. We affirm.

# BACKGROUND

In May 2016, Saginaw contracted with Kimley-Horn and Associates, Inc. (Kimley-Horn), as engineer, and JLB Contracting, LLC (JLB), as contractor, to reconstruct and widen approximately 8,500 feet of roadway on Bailey Boswell Road in Saginaw, Texas (Construction Contract). With a portion of the road construction complete, the road was partially open on June 29, 2017. On that day, Cruz was driving east on Bailey Boswell Road when a manhole cover flipped open in front of him.

According to Cruz, the newly opened section of road had been open for only a few hours. The vehicle ahead of Cruz drove over a manhole in the road. As the vehicle passed over the manhole, the manhole cover flipped open so that it extended vertically from the manhole. Cruz did not have time to react, and his vehicle hit the cover, causing his vehicle to flip over and skid down the road on its roof. Cruz was injured in the accident.

Cruz filed suit against Saginaw, Kimley-Horn, JLB, and two other defendants for negligence and premises liability on December 27, 2018. Cruz served interrogatories and requests for disclosure, production, and admissions with his petition. Saginaw answered and filed a plea to the jurisdiction, claiming the TTCA barred Cruz's claims, and submitted responses to Cruz's discovery requests. Saginaw filed its brief in support of the plea to the jurisdiction on August 9, 2019, attaching as evidence the Construction Contract, a transcript of an accident witness's

statement, and declarations of Melanie McManus, Saginaw's Human Resources Director and Risk Coordinator, and Rick Trice, Saginaw's Public Works Department Director. Saginaw also filed a motion to amend its admissions on August 9, 2019. In Saginaw's motion, counsel asserted that Saginaw's prior admissions were based on an incomplete copy of the Construction Contract. After receiving the full contract on July 1, 2019, counsel determined that three admissions were incorrect and sought permission to amend. Cruz filed responses in opposition to Saginaw's plea and motion and objected to McManus's and Trice's declarations.

The trial court heard Saginaw's plea and motion on August 15, 2019. In open court, the trial court sustained Cruz's objections to Saginaw's evidence. McManus and Trice were present at the hearing, and Saginaw called Trice to testify. Cruz objected to the witnesses as untimely disclosed, and the trial court sustained Cruz's objections. The trial court issued written orders on August 15, 2019, sustaining Cruz's objections to the McManus and Trice declarations and denying Saginaw's plea to the jurisdiction and motion to amend its admissions. This appeal followed.

## ANALYSIS

In seven issues, Saginaw contends the trial court erred in denying its plea to the jurisdiction and abused its discretion in denying Saginaw's motion to amend its admissions, which affected the trial court's ruling on the plea to the jurisdiction.

## A.    Plea to the Jurisdiction

In issues one, two, three, and four, Saginaw contends the trial court erred in denying its plea to the jurisdiction. Each issue concerns a different ground on which governmental immunity could be waived under the TTCA.

"Governmental immunity generally protects municipalities and other state subdivisions from suit unless the immunity has been waived by the constitution or state law." *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019) (quoting *City of Watauga v. Gordon*, 434 S.W.3d 586, 589 (Tex. 2014)). The purpose of a plea to the jurisdiction is to "defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

Governmental immunity defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *Arnold v. Univ. of Tex. Sw. Med. Ctr. at Dallas*, 279 S.W.3d 464, 467 (Tex. App.—Dallas 2009, no pet.). The existence of subject matter jurisdiction is a question of law we review de novo. *Arnold*, 279 S.W.3d at 467; *see also State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

The TTCA waives governmental immunity for certain negligent acts by governmental employees. *See* TEX. CIV. PRAC. & REM. CODE § 101.021. A party suing a governmental unit bears the burden to affirmatively show waiver of immunity. *McKenzie*, 578 S.W.3d at 512; *Tex. Dep't of Criminal Justice v. Miller*,

51 S.W.3d 583, 587 (Tex. 2001). When determining whether the party has met this burden, we may consider the facts alleged by the plaintiff and the evidence submitted by the parties. *See McKenzie*, 578 S.W.3d at 512; *Tex. Nat. Res. & Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001). We liberally construe the plaintiff's pleadings, taking all factual assertions as true, and look to the plaintiff's intent. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012); *Tex. Dep't of Criminal Justice v. Hawkins*, 169 S.W.3d 529, 532 (Tex. App.—Dallas 2005, no pet.).

We must also consider the evidence submitted when necessary to resolve the jurisdictional issue. *Heckman*, 369 S.W.3d at 150. The review of such evidence is similar to a summary-judgment review. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 554 (indulging every reasonable inference and resolving all doubts in favor of non-movant). "If the evidence raises a fact question on jurisdiction," we cannot grant the plea, "and the issue must be resolved by the trier of fact." *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam). However, "if the evidence is undisputed or fails to raise a fact question, the plea must be granted." *Id.*

### 1. Negligence

In its first issue, Saginaw contends that Cruz failed to offer evidence that his injuries were caused by Saginaw's use or operation of a motor-driven vehicle or equipment, as required to waive immunity under section 101.021(1) of the TTCA. In its second issue, Saginaw likewise contends that Cruz's injuries were not caused

by use or condition of tangible personal property, as required to waive immunity under section 101.021(2) of the TTCA.

Cruz's first amended original petition alleges two causes of action: negligence and premises liability. In its brief in support of its plea, Saginaw asserted Cruz's negligence claim failed to trigger the waiver of immunity under section 101.021 of the TTCA because the only motor-driven vehicle or equipment involved in the accident was Cruz's vehicle. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(1)(A) (waiving immunity for negligent "use of a motor-driven vehicle or motor-driven equipment"). Saginaw further argued that Cruz's only potential claim was premises liability because the manhole cover was not personal property. According to Saginaw, the manhole cover was a fixture because, although it was removable, it was intended to remain permanently affixed to the road. Thus, Cruz could not bring a claim for negligent use of personal property. *See id.* § 101.021(2) (waiving immunity for personal injury caused by a "use of tangible personal or real property").

In both his response to Saginaw's plea and brief on appeal, Cruz does not challenge Saginaw's contention that he could not bring a negligence claim under section 101.021(1)(A). Indeed, Cruz's petition does not cite any action taken by Saginaw in support of his negligence claim. Cruz likewise does not challenge Saginaw's contention that the manhole cover is not personal property. Cruz's petition refers to "tangible personal property" only once, as part of his broad allegations against the collective defendants on his premises liability claim. The

record further reflects that Cruz made no argument and presented no evidence that his injuries arose from Saginaw's "operation or use of a motor-driven vehicle or motor-driven equipment" or "use of tangible personal or real property." *See id*. § 101.021. Consequently, we sustain Saginaw's first and second issues.

### 2. Premises Liability

In its third issue, Saginaw contends that Cruz failed to offer proof Saginaw had actual knowledge of the alleged premises defect that "came into existence seconds before he was injured." In its fourth issue, Saginaw likewise contends that Cruz failed to offer proof Saginaw had constructive knowledge of any alleged special defect.

Saginaw acknowledges that there are two types of premises defect claims that waive immunity: premises defect and special defect. *See id*. §§ 101.021, .022. Although the TTCA imposes different standards of care depending on whether the condition is a premises defect or a special defect, *see id*. § 101.022, Saginaw did not contest in its plea whether the manhole cover constituted a premises defect or a special defect. In his response to Saginaw's plea, however, Cruz expressly argued "[t]he condition of the subject manhole cover at issue is a 'special defect' because, when improperly fitted, as it was in this case, the special defect constituted an obstruction and a hole in the ground (i.e., an excavation)." *See id*. § 101.022(b) (describing special defects as "excavations or obstructions on highways, roads, or streets"). Cruz reiterates this argument on appeal. Because neither party contends

–7–

the manhole cover constituted a premises defect, which requires proof the governmental unit had actual knowledge of the dangerous condition, *see Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 385 (Tex. 2016), we sustain Saginaw's third issue.

Although Saginaw's fourth issue contends that Cruz failed to offer proof Saginaw had constructive knowledge of any special defect, Saginaw argues that Cruz had the burden to prove that Saginaw had actual knowledge. Generally, the TTCA "limits the government's duty to prevent injury from premise defects to those of which it has actual knowledge." *Reyes v. City of Laredo*, 335 S.W.3d 605, 606 (Tex. 2010) (per curiam). If the condition is a special defect, however, a governmental unit owes the duty applicable to an invitee, that is, the governmental unit must use ordinary care to reduce or eliminate an unreasonable risk of harm created by a condition of which it is or reasonably should be aware. *See id.* at 606–07. Consequently, Cruz had only to prove that Saginaw had constructive knowledge of any alleged special defect. *See City of Weston v. Gaudette*, 287 S.W.3d 832, 838 (Tex. App.—Dallas 2009, no pet.) ("A city's duty to warn of a special defect exists even if the city has only constructive knowledge.").

Saginaw argues it could not have actual knowledge because "the manhole cover flipped open mere seconds before [Cruz's] car struck it." Thus, Saginaw did not have time to learn of any defect. Moreover, it did not have control of the premises. According to Saginaw, it relinquished control over the premises to JLB

–8–

through its Construction Contract. Without control over the premises, Saginaw argued, it could not have actual knowledge of any defect on the premises. Setting aside Saginaw's misstatement of the knowledge requirement, we disagree with Saginaw's posited conclusion.

Saginaw attempts to constrain the occurrence of the special defect at issue here to the moment the manhole cover flipped open by directing us to our holding in *Zaidi v. North Texas Tollway Authority*, No. 05-17-01056-CV, 2018 WL 6426798, at \*3 (Tex. App.—Dallas Dec. 6, 2018, no pet.) (mem. op.). *Zaidi* concerned two single-vehicle accidents. *Id*. at \*1. The first accident occurred when a vehicle driven by Taion Rahaad Tolbert left the roadway and struck a light pole. *Id*. The light pole fell onto the roadway. *Id*. Zaidi was traveling the same direction about two minutes behind Tolbert. *Id*. Zaidi's vehicle struck the light pole, killing Zaidi. *Id*. Zaidi's heir and estate representative sued Tolbert and the North Texas Tollway Authority (NTTA). *Id*. On appeal from the trial court's grant of NTTA's plea to the jurisdiction, we concluded, "Considering the almost simultaneous creation of the special defect and [Zaidi's] collision, there is no evidence from which to create a fact issue as to whether NTTA should have been aware of the downed pole earlier or whether NTTA failed to use ordinary care to protect [Zaidi] from colliding with the downed pole." *Id*. at \*3. Saginaw argues our holding in *Zaidi* demands finding Saginaw could not have had constructive knowledge of the upturned manhole cover as a matter of law.

–9–

The downed light pole in *Zaidi*, however, is factually distinct from the upturned manhole cover at issue here for four reasons. First, the light pole fell as the result of Tolbert's vehicle leaving the roadway and striking it. Here, the evidence indicates that the manhole was located in the roadway, and the cover flipped open as a vehicle passed over it. Second, the record in *Zaidi* reflected that the light pole was installed in the late 1960s, and its collapse in the accident was consistent with the design and materials used in such poles. *Zaidi*, 2018 WL 6426798, at *3. Here, the record reflects that the manhole cover was intended to remain in place when a vehicle passed over it. The record further reflects that the manhole cover did not remain in place and had to be forced back into position after the accident. Specifically, Saginaw attached a transcript of an interview with accident witness Robyn Victor to its brief in support of its plea. Victor testified that a firefighter who responded to the accident had to "stomp" on the manhole cover several times before it stayed down. Third, the light pole in *Zaidi* had been installed nearly forty years before the accident. The record here reflects that the manhole cover at issue had been installed immediately before the accident as part of Saginaw's "reconstructing and widening" of Bailey Boswell Road. Indeed, the record reflects that the section of road at issue was still under construction when the accident occurred. Finally, we did not conclude in *Zaidi* that the downed light pole was a special defect. Rather, we merely assumed without deciding that it was a special defect to analyze whether NTTA had constructive knowledge. *Id.*

–10–

Unlike the alleged defect in *Zaidi*, which did not exist until Tolbert's vehicle struck the light pole, the evidence here indicates the defect in the manhole cover existed before the vehicle passed over the manhole. The Construction Contract specified that the "work required for this project" included the installation of "Storm Drain Manholes" and work to "replace cone, frame, ring, cover, and adjust existing sanitary sewer manhole." Cruz offered evidence in response to Saginaw's plea showing that the manhole cover at issue was covering a "storm sewer" manhole. Thus, the record reflects evidence that the manhole cover was installed as part of the ongoing construction project. As previously discussed, Saginaw's own evidence shows that the manhole cover did not stay affixed to the hole as intended.

Saginaw argues that it could not have discovered any defect in the manhole cover before the accident because it did not have control of the construction site. According to Saginaw, the Construction Contract gave JLB control over the site, and Saginaw's reserved right to enter the site and inspect JLB's work is insufficient to show the degree of control necessary to have actual knowledge of the alleged special defect. We disagree with Saginaw's analysis and contention that actual knowledge is required to prevail on a special defect claim. *See Gaudette*, 287 S.W.3d at 838.

Saginaw cites *Black + Vernooy Architects v. Smith*, 346 S.W.3d 877, 886 (Tex. App.—Austin 2011, pet. denied), for the proposition that its retained right of inspection is insufficient to show the degree of control required to support a finding of actual knowledge. The claims in *Smith* arose from personal injuries suffered when

–11–

a balcony separated from a house designed by the defendant architecture firm. *Id*. at 879–80. One issue concerned the degree of control the firm had over the construction. *Id*. at 885–86. In addressing this "right to control" issue, the Austin court of appeals concluded that the firm's contractual "ability to reject" the construction work did not vest it with the "power to control the actual construction work performed at the site." *Id*. at 886. In so holding, the court cited several contract provisions expressly restricting the firm's control, including one stating that the firm "shall neither have control over or charge of, nor be responsible for, the construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work." *Id*. at 886–87. The record here reflects that the Construction Contract contains no such restrictions. Thus, *Smith* is inapplicable to our analysis.

In construing a written contract, we must ascertain and give effect to the parties' intentions as expressed in the agreement. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018). To do so, we consider the agreement as a whole. *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 55 (Tex. App.—Dallas 2006, pet. denied). We presume the words of a contract reflect the parties' intent, but we must construe words in the context in which they are used. *URI, Inc.*, 543 S.W.3d at 764. If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and courts should construe it as a matter of law. *Frost*

–12–

*Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam). If a contract is susceptible to more than one reasonable interpretation, it is ambiguous. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances existing at the time the contract was entered into. *Id*. at 529.

The Construction Contract specifically states, "The Engineer [Kimley-Horn] will be [Saginaw's] representative during construction," and requires Kimley-Horn to make periodic site visits to determine whether the work meets "essential performance and design features and the technical and functional engineering requirements . . . ." The Construction Contract also reserved Saginaw's right to enter and inspect the work. Specifically, the contract states:

> [Saginaw] reserves the right to enter the property or location on which the works herein contracted for are to be constructed or installed, by such agent or agents as he may elect, for the purpose of inspecting the work, or for the purpose of constructing or installing such collateral work as [Saginaw] may desire.

The Construction Contract also states that "[d]uring the progress of the work, all materials, equipment, and workmanship shall be subjected to such inspections and tests as will assure conformance with the contract requirements." And "[a]ll testing shall be done by a testing laboratory chosen by [Saginaw]." Regarding the use of a section of work, the Construction Contract states:

–13–

> Whenever, in the opinion of the Engineer, any section or portion of the work, or any structure is in suitable condition, it may be put into use upon written order of the Engineer or [Saginaw], and such use shall in no way be interpreted as acceptance of said work or waive any of the provisions of the contract.

Saginaw does not argue that any of these provisions are ambiguous or vague.

We conclude that the parties to the Construction Contract intended not only to reserve Saginaw's right to enter and inspect JLB's work, but also to subject JLB's work to mandatory inspection, to designate Kimley-Horn as Saginaw's agent to ensure that JLB's work conformed with the contract requirements, and to reserve to Saginaw and its agent the right to put any section of work into use. *See URI, Inc.*, 543 S.W.3d at 763. This evidence, coupled with evidence that the manhole cover failed to function correctly, is sufficient to raise a fact question as to whether Saginaw had constructive knowledge that the manhole cover did not conform to the contract requirements before it was put into use. *See Hayes*, 327 S.W.3d at 116; *Gaudette*, 287 S.W.3d at 838. Accordingly, we overrule Saginaw's fourth issue.

## B.    Saginaw's Amended Admissions

In its fifth, sixth, and seventh issues, Saginaw contends that the trial court abused its discretion in denying Saginaw's motion to amend its admissions because Saginaw provided good cause, the amended admissions would not be unfairly prejudicial to Cruz, and the presentation of the merits would be subserved by the amended admissions.

–14–

Under rule of civil procedure 198.3(a), a trial court may permit a party to withdraw or amend an admission if the party shows good cause for the withdrawal or amendment. TEX. R. CIV. P. 198.3(a). "Good cause is established by showing the failure involved was an accident or mistake, not intentional or the result of conscious indifference." *Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005) (per curiam). Even a slight excuse will suffice, especially when delay or prejudice to the opposing party will not result. *Spiecker v. Petroff*, 971 S.W.2d 536, 538 (Tex. App.—Dallas 1997, no pet.); *In re Cagle*, 585 S.W.3d 618, 623 (Tex. App.—Houston [14th Dist.] 2019, orig. proceeding). The trial court must also find that the party relying on the admissions will not be unduly prejudiced, and that presentation of the merits of the action will be subserved by permitting the withdrawal of the admission. TEX. R. CIV. P. 198.3(b).

We review a trial court's decision to permit or deny the withdrawal of deemed admissions for an abuse of discretion. *Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996) (per curiam); *Tommy Gio, Inc. v. Dunlop*, 348 S.W.3d 503, 509 (Tex. App.—Dallas 2011, pet. denied). We should set aside a trial court's ruling only if, after reviewing the entire record, it is clear that the trial court abused its discretion. *Papania*, 927 S.W.2d at 622 (appellate court concluded there was evidence in record to support trial court's order allowing withdrawal of admissions; record contained affidavit regarding party's action taken upon discovery of "faulty" admissions and, to show good cause, affidavit and report established party did not own property at

–15–

issue). A trial court abuses its discretion if it acts without reference to guiding rules or principles or acts arbitrarily or unreasonably. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985).

The admissions at issue concern Saginaw's right to control the details of JLB's work and persons installing the manhole cover, and Saginaw's custody and control of the manhole cover. Specifically, Saginaw admitted it:

- had the right to control the details of the work being conducted on the road construction project at the time of the incident;
- had custody and control of the manhole cover involved in the incident at the time of the incident; and
- had the right to control the details of the work performed by the persons [Saginaw] employed to supervise and install the manhole cover on the road construction project at the time of the incident.

Saginaw contends that Cruz served these and seventeen other requests for admission on Saginaw when he filed suit on December 27, 2018. Saginaw responded to Cruz's requests for admission on March 22, 2019. According to Saginaw, counsel responded to the admissions from a partial copy of the Construction Contract. Counsel claims she received from Saginaw "additional contract documents" on July 1, 2019, and these additional documents show that Saginaw "did not have the right to control either the construction site or the construction work." Saginaw filed its motion to amend its admissions on August 9, 2019, based on this revelation. Cruz responded that Saginaw had failed to show good cause, citing Saginaw's verified interrogatory responses that were served

simultaneously with its admissions as evidence of counsel's communication with Saginaw. We agree.

The record does not reflect that Saginaw provided evidence to show good cause for the requested amendments. During the hearing on Saginaw's motion, counsel merely argued that she failed to determine whether Saginaw had provided the complete contract and answered Cruz's requests for admission from a partial copy of the contract. Counsel contended that she was in "full communication" with Saginaw, but she offered no evidence to explain why Saginaw did not produce the complete Construction Contract until July 1, 2019, or to demonstrate that the failure to accurately respond was not the result of conscious indifference. *See Wheeler*, 157 S.W.3d at 442 (party seeking to withdraw admission must show good cause).

Saginaw also argued in its motion that Cruz could not have been unduly prejudiced because trial was still six months away when Saginaw filed its motion to amend its admissions. Saginaw conflates the last two requirements under rule 198.3(b). *See* TEX. R. CIV. P. 198.3(b) (the court must find "the parties relying upon the responses and deemed admissions will not be unduly prejudiced *and* that the presentation of the merits of the action will be subserved" (emphasis added)).

Cruz argued in response to Saginaw's motion that he would be unduly prejudiced by the amended admissions because he had relied on Saginaw's admissions in preparing his response to Saginaw's plea to the jurisdiction. Saginaw argued at the hearing on its motion that the amended admissions went directly to the

–17–

trial court's jurisdiction. Specifically, the admissions Saginaw sought to amend concerned Saginaw's control over the manhole cover and JLB's work. As previously discussed, these issues implicate the question of whether Saginaw had constructive knowledge of any alleged defect in the manhole cover, which is an element of Cruz's premises liability claim.

Saginaw noticed the hearing on its plea to the jurisdiction on June 25, 2019, approximately one week before Saginaw allegedly received the complete Construction Contract. Over one month later, and six days before the hearing on its plea to the jurisdiction, Saginaw filed its motion to amend its admissions on August 9, 2019, contemporaneously with its brief in support of its plea. Saginaw offered no explanation for this delay and failed to demonstrate that Cruz would not be unduly prejudiced by its amended admissions. *See id.*

Cruz further argued in response to Saginaw's motion that "the 'complete' version of the contract changes nothing regarding Saginaw's control and its duty owed to [Cruz]." We agree. As previously discussed, the complete Construction Contract, attached to Saginaw's brief in support of its plea, demonstrates that Saginaw retained a sufficient right of control to raise a fact issue as to its knowledge of the alleged defect. Additionally, other admissions that Saginaw did not seek to amend would equally serve to demonstrate Saginaw's control. Specifically, Saginaw admitted:

–18–

- an employee, agent, representative and/or subcontractor of [Saginaw] at times material to this suit and at the time of the incident made the basis of this suit had the duty to install and inspect the manhole cover; and

- acting through [its] employees, agents or representatives, [Saginaw] had installed the manhole cover on the roadway construction project prior to the time of the incident made the basis of this suit.

Thus, Saginaw failed to demonstrate the presentation of the merits of the action would be subserved by the amended admissions. *See* TEX. R. CIV. P. 198.3(b).

On this record, we cannot say that the trial court abused its discretion in denying Saginaw's motion to amend its admissions. *See Papania*, 927 S.W.2d at 622. Accordingly, we overrule Saginaw's fifth, sixth, and seventh issues.

## CONCLUSION

Having overruled Saginaw's fourth, fifth, sixth, and seventh issues, we conclude the trial court did not err in denying Saginaw's plea to the jurisdiction and motion to amend its admissions. Accordingly, we affirm the trial court's orders.

/s/ Robbie Partida-Kipness
ROBBIE PARTIDA-KIPNESS
JUSTICE

Schenck, J., dissenting

191141F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

CITY OF SAGINAW, TEXAS, Appellant

No. 05-19-01141-CV     V.

BRANDON CRUZ, Appellee

On Appeal from the 160th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-18-19227. Opinion delivered by Justice Partida-Kipness. Justices Schenck and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 27th day of August, 2020.