**CITY OF WESTON, Texas, Appellant**

v.

**Chad and Jennifer GAUDETTE, Appellees.**

**No. 05–08–01478–CV.**

Court of Appeals of Texas, Dallas.

May 13, 2009.

Darrell G–M Noga and Brandon S. Shelby, Dallas, TX, for Appellant.

Marla Suzanne Pittman, Friedman & Feiger, Dallas, TX, for Appellee.

Before Justices RICHTER, LANG, and MURPHY.

## OPINION

Opinion by Justice MURPHY.

Appellees Chad and Jennifer Gaudette sued the City of Weston for personal injury damages claimed as the result of Chad's single-vehicle motorcycle accident alleged to have occurred because of road conditions on a blacktop county road; one condition was described as a pothole measuring ten feet wide and five to six inches deep and extending the width of one traffic lane. The City perfected its interlocutory appeal from the denial of its plea to the jurisdiction and motion to dismiss asserting governmental immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Ver-

non 2008). In a single issue, the City contends the Gaudettes failed to allege and demonstrate facts supporting a premise or, alternatively, special defect cause of action sufficient to waive the City's immunity from suit under the Texas Tort Claims Act (Act). We affirm.

## PROCEDURAL BACKGROUND

In their original petition, the Gaudettes allege waiver of the City's sovereign immunity as the result of Chad's personal injury caused by a premises defect that posed an unreasonable risk of harm, about which the City had actual knowledge and the Gaudettes did not. They also allege "the condition of the roadway presented an unexpected and unusual danger to Plaintiff Chad Gaudette, an ordinary user of the roadway."

The City answered and filed a plea to the jurisdiction and motion to dismiss asserting governmental immunity. The City argued the Gaudettes had not pled a special defect case and had failed to allege any facts sufficient to support a cause of action under a premise defect theory. The City asserted alternatively that its attached evidence defeated the Gaudettes's allegations. The attachments were an accident report, the affidavit of the Mayor Pro Tem Scott Morrisey, and copies of case law.

The Gaudettes responded and attached the affidavit of Duane Hallof, a friend of Chad's riding his motorcycle with Chad at the time of the accident; the affidavit of Viki Birmes, a resident on the county road where the accident occurred; and a certified copy of the State's motion to dismiss Chad's traffic ticket.

The trial court signed an order denying the plea and motion after the City's hearing at which no additional evidence was offered. The City appeals that order. In its summary of the argument, the City asserts the Gaudettes failed to allege any

set of facts sufficient to support a cause of action under a premise defect theory, the City did not have the requisite knowledge of the claimed unreasonably dangerous condition, and the condition of the road did not rise to the level of a special defect under the Act. In its argument, the City addresses only the merits of the jurisdictional evidence related to the Gaudettes's premise and special defect theories. Accordingly, we address the City's sole issue on the merits as to each defect theory.

## STANDARD OF REVIEW

■■■ Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex.2004). The existence of subject matter jurisdiction is a question of law and we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.* at 226, 228. The claimant has the burden to allege facts affirmatively demonstrating the trial court's jurisdiction. *Id.* at 226. A court is not required to look solely to the pleadings; rather, it may consider evidence and must do so when necessary to resolve the jurisdictional issues. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex.2000).

■■■ In reviewing a plea to the jurisdiction where, as here, evidence is submitted that implicates the merits of the case, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. This standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c), and the burden is on the governmental unit as movant to meet the summary judgment standard of proof. *Id.* After the governmental unit asserts and provides evidentia-

ry support for its plea, the nonmovants are required to show only that a disputed material fact issue exists. *Id.*

## LEGAL STANDARDS

### Waiver of Immunity Under the Texas Tort Claims Act

■ A city generally has sovereign immunity from suit. *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex.2008); *Miranda*, 133 S.W.3d at 224. The Legislature, however, has provided a limited waiver of a city's immunity from suit for certain tort claims under the Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.025 (Vernon 2005); *State v. Shumake*, 199 S.W.3d 279, 283 (Tex.2006). The Act includes, among other things, a limited waiver of a city's immunity from suits for "personal injury and death so caused by a condition or use of . . . real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 2005).

■■ The Act recognizes both premise and special defect claims, and the proof required to establish a breach of the duties owed for each claim depends on the type of defect alleged. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022 (Vernon Supp. 2008); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex.1992) (op. on reh'g). The court decides as a matter of law the question of whether a condition is a premise defect or a special defect. *Payne*, 838 S.W.2d at 238. The legal distinction between a premise defect and a special defect lies in the duty owed by a city to the person injured. *Reed*, 258 S.W.3d at 622 (citing *Payne*, 838 S.W.2d at 238). Under either theory, the claimant must prove the condition created an unreasonable risk of harm. *Payne*, 838 S.W.2d at 237.

### Premise Defect

■ A "premise defect" is not defined by the Act; thus, the courts look to the ordinary meaning of the words. *Cobb v. Tex. Dep't of Criminal Justice*, 965 S.W.2d 59, 62 (Tex.App.-Houston [1st Dist.] 1998, no pet.). Generally, the term may be defined as a defect or dangerous condition arising from a condition of the premises. *Univ. of Tex. Med. Branch v. Davidson*, 882 S.W.2d 83, 84 (Tex.App.-Houston [14th Dist.] 1994, no writ).

■ For a premise defect on a toll highway, road, or street, the Act limits the duty a city owes a claimant to "the duty that a private person owes to a licensee on private property." TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(c). That duty requires the city not to injure a licensee by willful, wanton, or grossly negligent conduct; furthermore, the city must use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the city is aware and the licensee is not. *Reed*, 258 S.W.3d at 622. Accordingly, a claimant must plead and prove either willful, wanton, or grossly negligent conduct, or that the city had actual knowledge of the dangerous condition, the claimant did not, and the city failed to warn of the condition or make the condition reasonably safe. *City of Houston v. Harris*, 192 S.W.3d 167, 175 (Tex. App.-Houston [14th Dist.] 2006, no pet.). To prove the city's "actual knowledge," the claimant must show "knowledge that the dangerous condition existed at the time of the accident." *Reed*, 258 S.W.3d at 623 (quoting *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex.2008) (per curiam)).

### Special Defect

A "special defect" also is not defined by the Act, but the Legislature identified rep-

resentative, non-exclusive examples "such as excavations or obstructions on highways, roads, or streets." Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b); *County of Harris v. Eaton*, 573 S.W.2d 177, 179 (Tex. 1978). "[T]he statutory test is simply whether the condition is of the same class as an excavation or obstruction." *Denton County, Tex. v. Beynon*, 283 S.W.3d 329, 332 n. 11 (Tex.2009). An excavation or obstruction could be described as a condition that presents an "unexpected and unusual danger to ordinary users of roadways"; such description, however, is not a condition or redefinition engrafted onto the Act by the supreme court. *Id.* (explaining *Payne,* and subsequent supreme court cases discussing whether a condition presents an unexpected and unusual danger to ordinary users of roadways). Conditions can be special defects like excavations or obstructions "only if they pose a threat to the ordinary users of a particular roadway." *Id.* (quoting *Payne*, 838 S.W.2d at 238 n. 3).

■ Size is one characteristic to be considered in determining whether a condition is of the same kind or class to be identified as a special defect. *Eaton*, 573 S.W.2d at 179. The condition in *Eaton* was a large oval-shaped hole in a two-lane asphalt road that varied between six and ten inches deep and four and nine feet wide, covering over ninety percent of the highway's width. *Id.* Such a defect, the court concluded, "had reached the proportions of a ditch across the highway" and constituted a special defect. *Id. See also Morse v. State*, 905 S.W.2d 470, 475 (Tex. App.-Beaumont 1995, writ denied) (substantial evidence presented on depth and length of drop-off that prevented tires from re-entering roadway).

■ A special defect does not exist when the size of a condition is the type of slight variation ordinary drivers, in the normal course of driving, should expect. *Reed,* 258 S.W.3d at 622. The supreme court in *Reed* found that a two-inch dropoff between traffic lanes was not a special defect and compared other instances of variations drivers should expect. *Id.* (citing *El Paso v. Bernal*, 986 S.W.2d 610, 611 (Tex.1999) (three inch depressed area in sidewalk); *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex.1999) (per curiam) (ninety-degree turn in a detour for a road construction project)). In contrast to those conditions, the supreme court identified the large hole in *Eaton* as a defect of unusual quality outside the ordinary course of events. *Eaton*, 573 S.W.2d at 179.

■ While the size of an alleged special defect is a significant consideration in analyzing whether the condition has an unusual quality outside the ordinary course of events, other characteristics are instructive. *Reed,* 258 S.W.3d at 622; *Stokes v. City of San Antonio*, 945 S.W.2d 324, 326–27 (Tex.App.-San Antonio 1997, no writ). Special defects are road conditions that "unexpectedly and physically impair a car's ability to travel on the road." *Rodriguez*, 985 S.W.2d at 85. "Unexpectedness" is an objective standard. *See City of Fort Worth v. Gay,* 977 S.W.2d 814, 819 (Tex.App.-Fort Worth 1998, no pet.); *State v. Wollesen*, 93 S.W.3d 910 (Tex.App.-Austin 2002, no pet.) (excessive amount of loose gravel was special defect). As recently explained by the supreme court, its "cases rest on the objective expectations of an 'ordinary user,' and such a driver would not be expected to careen uncontrollably off the paved roadway...." *Beynon*, 283 S.W.3d at 332.

■ When a special defect exists, the limitation of a city's duty in section 101.022 for a premise defect described above does not apply to the duty to warn of special defects. Tex. Civ. Prac. & Rem.

CODE ANN. § 101.022(b). *See also Reed,* 258 S.W.3d at 622. For a special defect, a city has the same duty to warn as a private landowner owes to an invitee. *Id.* (citing *Payne,* 838 S.W.2d at 237). That duty requires a city to use ordinary care to reduce or eliminate an unreasonable risk of harm of which the city knew or reasonably should have known. *Id.* To discharge its duty, a city must either adequately warn of the dangerous condition or make the condition reasonably safe. *See TXI Operations, L.P. v. Perry,* 278 S.W.3d 763, 764 (Tex.2009) (citing *State v. Williams,* 940 S.W.2d 583, 584 (Tex.1996) (per curiam)). A city's duty to warn of a special defect exists even if the city has only constructive knowledge. *State v. McBride,* 601 S.W.2d 552, 558 (Tex.Civ. App.-Waco 1980, writ ref'd n.r.e.) (citing *Eaton,* 573 S.W.2d 177). Thus, a claimant must plead and prove that the city had constructive knowledge of the dangerous condition, and the city failed to warn of the condition or make the condition reasonably safe. *Payne,* 838 S.W.2d at 237.

### ANALYSIS

The City first argues that the trial court erred by denying the City's plea to the jurisdiction and motion to dismiss the Gaudettes's premise defect claim, because the City lacked actual prior knowledge of the alleged defect, the condition created an unreasonable risk of harm, and the "unreasonably dangerous" condition existed at the time of the accident. Alternatively, the City contends the trial court erred by not dismissing the Gaudettes's special defect theory because the condition of the road was not an "unusual or unexpected danger to ordinary users of the roadways, such that the entire road was obstructed or impassable." The City abandons its assertion of pleading deficiency, and we therefore turn to the jurisdictional facts to determine whether, as a matter of law, the condition of the road constituted a defect under the Act.

### Jurisdictional Evidence

On October 5, 2007, Chad Gaudette was traveling on his motorcycle in the northbound lane of County Road 206 approximately one mile east of FM 543 in the City of Weston. He was riding in tandem with his friend, Duane Hallof. According to Hallof's affidavit, neither he nor Chad had traveled previously on this road. Both riders had negotiated a turn in the roadway and were accelerating to a speed of thirty-five to forty miles per hour, below the posted sixty-mile-per-hour speed limit, traveling what appeared to be a clear and safe road ahead. There were no warning signs posted to alert the users of the roadway to any unusual or unexpected condition of the road. The riders encountered "deep potholes with large chunks of asphalt and chipped up rocks for about 30 feet—complete across the face of the road." Both Chad and Hallof failed to see the potholes and the riders did not have enough time to maneuver around "the multiple pits nor the large chunks of asphalt and rocks." Hallof was riding in front of Chad and hit the "first pit" before Chad. Hallof testified that because of the weight of his bike, he was able to keep his motorcycle upright, although the impact bent the solid steel shift lever and caused stress marks on the frame below the engine where the bike "took the multiple blows." Hallof saw Chad through his rearview mirror "flying head over feet and over the handlebars of his motorcycle." As Hallof turned back, he found Chad's bike in a pile and "Chad was seriously injured." The accident occurred in front of a residence, and the homeowner, Viki Birmes, came out to help. Hallof returned to the accident scene the next day and photographed the road conditions, including the first hole

Chad hit that extended across the entire lane in which Hallof and Chad were traveling. Hallof attached the photographs to his affidavit.

Birmes also submitted an affidavit in which she testified she resided on County Road 206 at the time of Chad's accident. She described the largest pothole that caused Chad's accident, stating it covers "the entire width of the northwest-bound lane and is about 10 feet in diameter and 5–6 inches deep." Birmes testified she travels the roadway at least once per day and slows to three miles per hour to avoid scraping the underside of her car. In July or August of 2007, Birmes met with the Mayor of Weston about the holes. She told the mayor she thought the road "was very dangerous and it would only be a matter of time before the holes caused an accident. He responded that the city already knew it was a problem." Birmes also confirmed the road condition on the day of Chad's accident was the same as she described, and the City had not fixed the holes or posted warning signs.

In support of its plea to the jurisdiction and motion to dismiss, the City relied on the affidavit of the City's Mayor Pro Tem Scott Morrisey. Morrisey testified the City's documents contained no record of any accidents or complaints reported prior to October 5, 2007 for the area in which Chad's accident occurred. At the hearing, the City acknowledged no requirement exists that a complaint be made in writing to impute knowledge to the City.

### Application of Law

Our review of whether the pleadings and proof establish a special defect as a matter of law is dispositive of the City's sole issue. We must determine whether the condition of County Road 206, with at least one hole covering "the entire width of the northwest-bound lane" and measuring "10 feet in diameter and 5–6 inches deep," constitutes a special defect or is just another Texas-size pothole encountered in the ordinary course of events. The City argues the condition is analogous to normal deterioration found by the supreme court in *Reed* to be the type of slight variation ordinary drivers, in the normal course of driving, should expect. *See Reed*, 258 S.W.3d at 621. We disagree.

We conclude the condition of County Road 206 meets the statutory test as being of the same class as an excavation or obstruction. The size alone compares to the proportions of the large hole across the two-lane asphalt road in *Eaton* described as a "ditch across the highway." *See Eaton*, 573 S.W.2d at 179. In contrast, the condition of County Road 206 far exceeds the two-inch drop-off between traffic lanes found by the supreme court in *Reed* to be the type of variation ordinary drivers should expect. *See Reed*, 258 S.W.3d at 621. The evidence shows Hallof and Gaudette encountered an unexpected condition in what appeared to be a clear road. That same condition physically impaired not only their ability to travel the road, but forced Birmes, a seasoned resident traveler, to a daily three-mile-per-hour trip. Birmes testified that she notified the mayor of the condition and the dangers she feared, and the mayor acknowledged awareness of the condition. On this record the condition of County Road 206 was a special defect as a matter of law and the evidence creates a disputed material fact on the issue of the City's constructive knowledge of the defect. We overrule the City's sole issue on all grounds.

### CONCLUSION

Applying a de novo standard of review, we conclude the trial court did not err in denying the City's plea to the jurisdiction

and motion to dismiss. The judgment of the trial court is affirmed.