

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00239-CV

CITY OF DENTON                                                                      APPELLANT

V.

RACHEL PAPER                                                                      APPELLEE

----------

## FROM THE 158TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

This is an interlocutory appeal by Appellant City of Denton from the trial court's denial of its motion for a traditional and a no-evidence summary judgment based on the City's assertion that governmental immunity bars the premise

---

[1]*See* Tex. R. App. P. 47.4.

liability suit filed against it by Appellee Rachel Paper.[2]  In three issues, the City claims that the trial court erred by denying its motion for summary judgment because the defect at issue was not, as a matter of law, a special defect; because the City conclusively proved that it had no actual knowledge of the premise defect; and because Paper failed to raise fact issues regarding the City's actual knowledge of, and Paper's lack of knowledge of, the premise defect.  For the reasons set forth below, we will affirm the trial court's denial of summary judgment for the City.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On March 19, 2007, the City's wastewater department began installation of a sewer tap and manhole on a section of Willowwood Street in Denton.  City employees excavated a portion of the street by cutting a large area out of the street, and they placed barricades around the construction area.  They installed the sewer tap on March 22, 2007, and packed the excavated cut-out area with backfill so that it was street level again.  The barricades were removed that day.  The next day, City employees returned to raise the sewer line, which had sunk from the backfill.  They raised the sewer line by packing additional backfill under

---

[2]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon 2008) (providing for interlocutory appeals from denials of pleas to the jurisdiction by governmental units); *Tex. Dep't of Criminal Justice v. Simons*, 140 S.W.3d 338, 349 (Tex. 2004) ("[A]n interlocutory appeal may be taken from a refusal to dismiss for want of jurisdiction whether the jurisdictional argument is presented by plea to the jurisdiction or some other vehicle, such as a motion for summary judgment.").

it, and then they repacked the excavated cut-out area of the street until it was level. At that point, the installation of the sewer tap and manhole was complete.

A little over a week later, on April 1, 2007, Paper was riding her bicycle on Willowwood Street when her bicycle's tire entered a sunken area of the street where the street had been cut away and excavated for installation of the sewer tap. After entering the sunken area of the street, Paper's front bicycle tire struck the hard edge of the existing roadway that had not been cut away and that had remained at street level. She flipped over the front of her bicycle and landed on her chin and hands. The fall knocked out several of her teeth. There were no barricades around the area.

Later that day, Paper's friend Joseph Wilson went to the accident site and took photographs of the condition of the street. Wilson rested a mechanical pencil "right up against the wall of the hole" where the sunken portion of the cut-out area abutted the uncut, hard edge of the existing street and took photographs showing the pencil sticking out to demonstrate the depth of the hole. Wilson later testified at his deposition that the hole was "a few inches, a couple of inches" or "almost a pencil length deep." The photographs show the "wall of the hole," a steep drop-off or edge, existing between the uncut portion of the street at street level and the sunken hole where the street had previously been cut away and excavated.

Paper sued the City, claiming that it was negligent and failed to warn of or repair the dangerous condition on the street. The City filed a motion for summary

3

judgment, alleging the affirmative defense of governmental immunity from suit under the Texas Tort Claims Act (the TTCA)[3] because the road condition constituted an ordinary premise defect, rather than a special defect, and alleging that no evidence existed that the City was actually aware of, and that Paper was not aware of, the premise defect. The City attached affidavits, deposition excerpts, and the City's work orders for the sewer tap installation project as evidence. Paper filed a response and supplemental response to the City's motion, countering that the street condition was a special defect and that, alternatively, it was a premise defect of which the City had actual knowledge. Paper attached deposition excerpts and the City's work orders as evidence. After the City filed a reply, the trial court denied the City's motion for summary judgment, specifically ruling that the street condition was a special defect. The City appealed.

### III. STANDARD OF REVIEW

We review a summary judgment de novo.[4] *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the

---

[3]*See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001–.109 (Vernon 2011).

[4]Because, as explained in greater detail below, we do not reach the City's no-evidence summary judgment challenges to Paper's ordinary premise defect claim, we will not set forth the no-evidence summary judgment standard of review.

4

nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

Governmental immunity is an affirmative defense. *See EPGT Tex. Pipeline, L.P. v. Harris Cnty. Flood Control Dist.*, 176 S.W.3d 330, 335 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010), *cert. denied*, 131 S. Ct. 1017 (2011); *see* Tex. R. Civ. P. 166a(b), (c); *Sipes v. City of Grapevine*, 146 S.W.3d 273, 279 (Tex. App.— Fort Worth 2004), *rev'd in part*, 195 S.W.3d 689 (Tex. 2006). To accomplish this, the defendant-movant must present summary judgment evidence that conclusively establishes each element of the affirmative defense. *See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

### IV. SPECIAL DEFECT: WAIVER OF GOVERNMENTAL IMMUNITY

#### A. Governmental Immunity and the TTCA

Generally, sovereign immunity protects the state against lawsuits for money damages unless the state has consented to suit. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Governmental immunity operates like sovereign immunity to afford similar protection to

5

subdivisions of the state, including counties, cities, and school districts, unless that immunity has been waived. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *San Antonio Indep. Sch. Dist. v. McKinney*, 936 S.W.2d 279, 283 (Tex. 1996). The TTCA establishes a limited waiver of this immunity and authorizes suits to be brought against governmental units in certain narrowly-defined circumstances. *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 846 (Tex. 2009); *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.021.

## B. Special Defects and Premise Defects

The TTCA recognizes personal injury claims arising from both premise and special defects, and the proof required to establish a breach of the duties owed for each claim depends on the type of defect alleged. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022; *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992) (op. on reh'g). Under either theory, the claimant must prove the condition created an unreasonable risk of harm. *Payne*, 838 S.W.2d at 237.

If a claim involves a premise defect under section 101.022(a) of the TTCA, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises. Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a). Under a licensee standard, a plaintiff must prove that the governmental unit had actual knowledge of a condition that created an unreasonable risk of harm, and also that the licensee did not have actual knowledge of that same condition. *Payne*,

6

838 S.W.2d at 237. But if a claim involves a special defect under section 101.022(b), a more lenient invitee standard applies. *York*, 284 S.W.3d at 847; *Payne*, 838 S.W.2d at 237. Under an invitee standard, a plaintiff need prove only that the governmental unit should have known of a condition that created an unreasonable risk of harm. *York*, 284 S.W.3d at 847; *Payne*, 838 S.W.2d at 237.

The TTCA does not define the term "special defect," but it does give guidance by likening special defects to "excavations or obstructions on highways, roads, or streets." Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b); *York*, 284 S.W.3d at 847; *Denton Cnty. v. Beynon*, 283 S.W.3d 329, 331 n.11 (Tex. 2009) ("[T]he statutory test is simply whether the condition is of the same class as an excavation or obstruction."). Conditions can be special defects like excavations or obstructions "'only if they pose a threat to the ordinary users of a particular roadway.'" *Beynon*, 283 S.W.3d at 331 (quoting *Payne*, 838 S.W.2d at 238 n.3). The supreme court recently explained,

> *Webster's* defines an excavation as a cavity and an obstruction as an impediment or a hindrance, but not every hole or hindrance is special; otherwise, the statutory limitation on the government's duty would amount to little. We have described the class of conditions intended by the statute as those which, because of their size or "some unusual quality outside the ordinary course of events," pose "'an unexpected and unusual danger to ordinary users of roadways.'" Thus, for example, a layer of loose gravel on the roadway surface, while a hindrance, is not a special defect because it does not "physically block the road," or "present the same type of 'unexpected and unusual danger to ordinary users of roadways'" intended by the statute. But "a sizeable mound of gravel . . . left on the roadway" could be a special defect. A two- to three-inch difference in elevation between lanes is not a special defect, *Reed*, 258 S.W.3d at 622 ("[T]here is nothing unusually dangerous about a

7

slight drop-off between traffic lanes in the roadway. Ordinary drivers, in the normal course of driving, should expect these slight variations on the road caused by normal deterioration." (citation omitted)), nor is a sharp turn in a road construction detour, *State v. Rodriguez*, 985 S.W.2d 83, 86 (Tex. 1999) (per curiam) ("This detour's sharp turn and other alleged design flaws did not unexpectedly and physically impair a vehicle's ability to travel on the roadway in the same way as a ditch in the road or a ten-inch drop along the shoulder.")[, *abrogated on other grounds by Beynon*, 283 S.W.3d at 329], nor is a stopped car, *State v. Burris*, 877 S.W.2d 298, 299 (Tex. 1994) (per curiam) ("A fully operational motor vehicle, making an illegal movement or momentarily stopped on a highway, is neither a defect in the highway premises nor an excavation or obstruction or similar condition."). But "a ditch across the highway" is a special defect, [*Cnty. of Harris v.*] *Eaton*, 573 S.W.2d [177,] 178–79 [(Tex. 1978)] ("Witnesses described the hole as oval shaped, varying at places from six to ten inches in depth and extending over ninety percent of the width of the highway. The hole was four feet wide at some points and nine feet wide at others."), as is a large sign lying face down in the middle of the road, *State v. Williams*, 940 S.W.2d 583, 585 (Tex. 1996) (per curiam).

*Reyes v. City of Laredo*, No. 09-1007, 2010 WL 4909963, at *2 (Tex. Dec. 3, 2010) (some internal citations omitted).

Some characteristics of defects that fall into the same class as excavations and obstructions include, for example, the size of the dangerous condition, *see Eaton*, 573 S.W.2d at 179, some unusual quality outside the ordinary course of events, *see Reed*, 258 S.W.3d at 622, something that "unexpectedly and physically impair[s] a car's [or bicycle's] ability to travel on the road," *see Rodriguez*, 985 S.W.2d at 85, and an unexpected and unusual danger to ordinary users of roadways, *see Payne*, 838 S.W.2d at 238. *York*, 284 S.W.3d at 847. We must look to "the objective expectations of an 'ordinary user.'" *Beynon*, 283 S.W.3d at 332. A bicyclist is an ordinary user of a roadway and enjoys the

8

same rights to use public roads as do motorists. *See Hindman v. State Dep't of Highways & Pub. Transp.*, 906 S.W.2d 43, 43 (Tex. App.—Tyler 1994, writ denied). Whether a condition is a special defect or a premise defect is a question of law for the court to decide. *Payne*, 838 S.W.2d at 238.

### C. Defect was Special Defect

Here, the summary judgment evidence establishes that the road defect at issue was an almost-pencil-length-deep sunken hole that abutted with a sharp vertical edge of the uncut, existing street; the road defect was located in the middle of a two lane street (one lane each direction) and was caused by the City's excavation of the street for installation of a sewer tap and manhole just one week earlier. Unlike the cases relied on by the City, the defect here was more than a slight variation between lanes and was not caused by normal deterioration, *cf. Reed*, 258 S.W.3d at 621–22 (holding that two-inch drop-off between traffic lanes was not unusually dangerous and that such "slight variations on the road caused by normal deterioration" should be expected); it was more than a minor flaw in a road shoulder, *cf. Hindman*, 906 S.W.2d at 43–45 (holding that bump on road shoulder was an imperfection that cyclists could and should anticipate when riding on the shoulder of a road); and it was more than a worn or eroded area in the road, *cf. City of El Paso v. Bernal*, 986 S.W.2d 610, 611 (Tex. 1999) (holding that eroded, worn sidewalk was not an unexpected and unusual danger). The defect was not analogous to a pothole encountered in the ordinary course of events; rather, the almost-pencil-length-deep sunken

9

hole's intersection with the sharp, vertical edge of the existing, uncut area of the street was an unexpected and unusual danger that had existed for less than a week, that was the result of the City's cutting a hole in the street, and that an ordinary bicyclist of the road, like Paper, would not expect to encounter. *See City of El Paso v. Chacon*, 148 S.W.3d 417, 425 (Tex. App.—El Paso 2004, pet. denied) ("This defect was a hole, located where a pedestrian would normally walk and not expect to encounter it."); *cf., e.g.*, *Villarreal v. State*, 810 S.W.2d 419, 422 (Tex. App.—Dallas 1991, writ denied) (holding that median cut was long-standing modification in roadway and, consequently, not a special defect); *Tarrant Cnty. Water Control & Improvement Dist. No. 1 v. Crossland*, 781 S.W.2d 427, 433 (Tex. App.—Fort Worth 1989, writ denied) (explaining that special defect must be something out of the ordinary course of events rather than a long-standard, routine, or permanent defect).

The City focuses almost exclusively on the size of the road defect, arguing that "the alleged dangerous condition is a depression of a few inches in the roadway." But size is only one consideration to take into account in determining whether the defect is in the same class as an excavation or obstruction. *See City of Weston v. Gaudette*, 287 S.W.3d 832, 837 (Tex. App.—Dallas 2009, no pet.). And contrary to the City's assertion, the defect was more than a simple "depression" in the road; it was a sunken depressed hole that abutted a steep "wall" or ledge of the uncut street. Although the summary judgment record does not include the exact measurements of the defect, the color photographs taken

10

by Wilson, which are attached to his deposition excerpts as part of the City's summary judgment evidence, show that the cut-out portion of the road extends several feet from the shoulder of the road out into the right lane and show the sharp, steep drop-off from the road grade to a hole several inches below street level. Wilson testified at his deposition that he rested a mechanical pencil "right up against the wall of the hole" and that the hole was "a few inches, a couple of inches," "almost a pencil length deep." Wilson's photographs show the "wall" of the hole with a pencil sticking up on the edge. The deepest part of the hole (where the pencil was resting against the edge) is located several feet into the right lane from the shoulder, where ordinary users of the road, including bicyclists, would travel. *See Chacon*, 148 S.W.3d at 425; *cf. Beynon*, 283 S.W.3d at 332 (holding that floodgate arm located off the road did not pose threat to ordinary users of road). And Paper could not have navigated around the sunken area and subsequent sharp edge without crossing into the oncoming lane of traffic.

We hold that the defect in this case, which was caused by the City's excavation of and cutting away the street about a week prior to Paper's accident and which was an "almost pencil length deep" sunken area of a street abutting a steep, vertical edge of the uncut, existing street was in the same kind or class as an excavation or obstruction and posed an unexpected and unusual danger to ordinary users (bicyclists) of the roadway such that it constituted a special defect. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b). Thus, we hold that the trial

11

court did not err by determining that the defect was a special defect. We overrule the City's first two issues to the extent that it argues that the defect was not a special defect as a matter of law and that the trial court erred by so finding.

Broadly construing the City's entire brief,[5] the City does not assert that Paper failed to present any evidence of, or that the City conclusively negated the element of, the City's knowledge on Paper's special defect claim. *See York*, 284 S.W.3d at 847; *Payne*, 838 S.W.2d at 237. Instead, the remainder of the City's issues, arguments, and analysis challenge Paper's ordinary premise defect claim. Because we have held that the trial court did not err by determining that the road condition constituted a special defect, we need not address the remainder of the City's issues asserting that it was entitled to summary judgment because Paper had no claim for an ordinary premise defect. *See* Tex. R. App. P. 47.1.

---

[5]The City's "Issues Presented" in its brief do not match the headings and analysis provided in the remainder of its brief.

## V. Conclusion

Having overruled the City's dispositive issues, we affirm the trial court's order denying summary judgment for the City.

SUE WALKER
JUSTICE

PANEL:  DAUPHINOT, WALKER, and MCCOY, JJ.

DELIVERED:  May 19, 2011