# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00265-CV

**The University of Texas at Austin, Appellant**

**v.**

**John Sampson, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT**
**NO. D-1-GN-11-000915, HONORABLE GUS J. STRAUSS, JR., JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellee John Sampson brought suit against the University of Texas at Austin pursuant to the Texas Tort Claims Act (TCA) seeking damages for personal injuries he sustained on the University's campus. *See* Tex. Civ. Prac. & Rem. Code §§ 101.001–.109. In this interlocutory appeal, the University challenges the trial court's order denying its plea to the jurisdiction, motion to dismiss, and motion for summary judgment based on sovereign immunity. *See id.* § 51.014(a)(8). For the reasons that follow, we reverse the trial court's order and dismiss Sampson's claims for lack of jurisdiction.

## BACKGROUND

On November 21, 2009, Sampson, a professor at the University's law school, was injured while walking to his office on campus after dark. Sampson alleges that he tripped over an extension cord strung across a pedestrian walkway between a parking lot on the campus and the law

school.  Sampson sued the University to recover damages for his injuries, alleging that "[t]he cord was not taped down or secured in any way," that a portion of the cord ran across and slightly above the walkway, and that, as he was walking to his office after dark, the cord hit his leg about mid-shin, causing him to pitch forward and injure himself.  He alternatively asserted causes of action for negligence, a special defect, and a premise defect.  *See id*. §§ 101.021(2), .022(a), (b).  As to his negligence claim, he alleged that the University was negligent by failing to properly locate and secure the cord, placing it in a dangerous location, and failing to warn of the dangerous location.

The University filed a plea to the jurisdiction, motion to dismiss, and motion for summary judgment accompanied by evidence.  The University asserted that the trial court lacked jurisdiction over Sampson's claims because they did not fall within the limited waiver of sovereign immunity provided under the Texas Tort Claims Act.  The University's evidence included photos of the walkway and excerpts from depositions of an employee of the law school and an employee of a third party.  The third party assisted with the set-up for a tailgate party that was in progress on the lawn adjacent to the walkway at the time Sampson was injured.  The set-up included installing lights in the trees for the event, and extension cords were used to power the lights.  The University presented evidence that would support findings that a University extension cord was not in the area where Sampson was injured, that the third party placed the extension cords for the tailgate event, and that the University was unaware that a cord was lying across the walkway.  The University also presented evidence to support a finding that there were no prior reports of any other falls or incidents in the area or problems with past events that were held in the area.

Sampson filed a response with evidence, including an affidavit by Sampson and excerpts from depositions of employees of the University and the third party. In his affidavit, Sampson described the location of the cord and his fall. He averred that the cord "was not taped down or secured in any way" or "illuminated," that it was "partially obscured by ivy on the sides of the walkway," and that "there was no cones or other warning signs signaling the cord's presence." He averred that he tripped over a portion of the cord that ran across and slightly above the walkway, and that he "would never have expected to encounter an extension code strung in that manner across a pedestrian walkway." The deposition evidence showed that University employees generally provided electrical services for the third party company that set up the tailgate party, including observing the lights after they were installed to make sure "everything was fine," but no witness could say that they saw any university employee place the extension cord across the walkway.[1]

---

[1] For example, an employee for the third party testified:

Q.     Okay. So on the 16th, you and [UT employees] discussed stringing the extension cord above the walkway, through the trees?

A.     Yes.

Q.     So that it wouldn't be a tripping hazard?

A.     Yes.

Q.     Okay. And do you know whether that was actually done?

A.     No.

Q.     Do you know who would have run the extension cords from the outlet to the area where the lights were plugged in? Would it have been someone from [the third party] or someone from [the University]?

The University filed a supplemental plea, motion to dismiss, and motion for summary judgment with additional evidence as well as a reply to Sampson's response. The University's evidence included additional deposition excerpts. The University argued: (i) Sampson's claims were limited to a premise defect claim, (ii) under that theory of recovery, Sampson had the burden to show that the University had actual knowledge of the existence of the cord and an unreasonably dangerous condition, and (iii) there was no evidence of actual knowledge to support this element. The University also asserted that, even if the trial court considered Sampson's general negligence theory of liability, the cord was owned and used by the third party, not an employee of the University, and that no special defect existed.

After a hearing, the trial court denied the University's plea and motions. The University then brought this interlocutory appeal.

---

A.    I believed it to be somebody from [the University].

Q.    Do you know who from [the University]?

A.    No.

Q.    And why did you believe that it was someone from [the University]?

A.    Well, anytime that we have somebody involved that has a department that takes care of that, they bring the electricity to us and then plug in.

Q.    But you don't know whether that happened for this event?

A.    I don't.

## ANALYSIS

The University raises two issues on appeal. The University contends that the trial court erred in denying its plea and motions because (i) Sampson failed to demonstrate a waiver of sovereign immunity under the TCA, and (ii) Sampson cannot proceed on his general negligence claims once a premise defect was identified, and, in any case, he did not plead or prove a negligent use of tangible personal property by a paid employee of the University.

**Standard of Review**

We review a plea questioning the trial court's subject matter jurisdiction de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We focus first on the plaintiff's petition to determine whether the facts that were pled affirmatively demonstrate that subject matter jurisdiction exists. *Id*. at 226. We construe the pleadings liberally in favor of the plaintiff. *Id*. If a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *Id*. at 227 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). When evidence is submitted that implicates the merits of the case, as is the case here, our standard of review generally mirrors the summary judgment standard under Texas Rule of Civil Procedure 166a(c). *Id.* at 228; *see also* Tex. R. Civ. P. 166a(c). The burden is on the governmental unit to present evidence to support its plea. *Miranda*, 133 S.W.3d at 228. If the governmental unit meets this burden, the burden shifts to the nonmovant to show that a disputed material fact exists regarding the jurisdictional issue. *Id.* We take as true all evidence that is favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

5

**Texas Tort Claims Act**

"In general, the State of Texas retains sovereign immunity from suit." *University of Texas at Austin v. Hayes*, 327 S.W.3d 113, 115 (Tex. 2010) (per curiam) (citing *Miranda*, 133 S.W.3d at 224). The TCA, however, provides a limited waiver of immunity for certain tort claims. *See* Tex. Civ. Prac. & Rem. Code § 101.025 (waiving sovereign immunity "to the extent of liability created by this chapter" and allowing person with a claim under TCA to sue governmental unit for damages). Thus, to sue a subdivision of the State for a tort, the pleadings must state a claim under the TCA. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 639 (Tex. 1999); *see Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003) (explaining that plaintiff bears burden of establishing waiver of immunity under TCA). The University is a subdivision of the State and thus protected by sovereign immunity except as provided in the TCA.

**Negligence Claim**s

We begin with the University's challenge to Sampson's negligence cause of action asserted pursuant to section 101.021(2) of the TCA. *See* Tex. Civ. Prac. & Rem. Code § 101.021(2).[2] As part of its second issue, the University argues that Sampson cannot proceed on his general negligence claims once a premise defect was identified.

"The Tort Claims Act's scheme of a limited waiver of immunity from suit does not allow plaintiffs to circumvent the heightened standards of a premises defect claim contained in

---

[2] Section 101.021(2) states: "A governmental unit in the state is liable for: . . . (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021(2).

6

section 101.022 by re-casting the same acts as a claim relating to the negligent condition or use of tangible property." *Miranda*, 133 S.W.3d at 233 (citing *State v. Tennison,* 509 S.W.2d 560, 562 (Tex. 1974) ("rejecting the argument that the Tort Claims Act 'creates two entirely separate grounds of liability' for negligent use or condition of real property and premise defect, but instead interpreting the premises defect provision to further limit the waiver of immunity for negligent use or condition of real property")); *see id.* (recognizing that "allow[ing] plaintiffs to characterize premises defect claims as claims caused by the negligent condition or use of personal or real property would render the Legislature's heightened requirements for premises defect claims meaningless" (citations omitted)); *City of Richardson v. Justus*, 329 S.W.3d 662, 665 (Tex. App.—Dallas 2010, no pet.) (concluding that, "[t]o the extent [the plaintiff] attempts to assert a claim based on any negligence . . . separate and apart from her premises liability claims, the Act does not waive the City's governmental immunity for such a claim").

To support his position that he has properly asserted a negligence claim under section 101.021(2), Sampson relies on *Rawlings v. Angelo State University*, 648 S.W.2d 430 (Tex. App.—Austin 1983, writ ref'd n.r.e.). We find Sampson's reliance on that case misplaced. In that case, one of the plaintiffs, a student of the university, asserted that she was injured when she tripped over a water hose that was placed across a sidewalk on the campus by an agent, servant, or employee of the university. *Id*. at 431. This Court concluded that the plaintiff's allegations were sufficient to state a cause of action under the TCA, based upon a "dangerous and unsafe condition on the premises." *Id*. at 434. This Court's conclusion in that case treated the alleged dangerous condition as a premise defect and is consistent with the University's position here that Sampson's claim is a

7

premise defect claim. We also note that this Court issued its opinion in *Rawlings* over two decades before the supreme court's opinion in *Miranda*.

If a negligence claim relies on a premise defect, the TCA does not waive immunity for such a claim. *See Miranda*, 133 S.W.3d at 233. Sampson's negligence allegations—failure to properly locate and secure the cord and to warn of its dangerous location—rely on an alleged premise defect, precluding Sampson from circumventing the heightened standards of a premise liability claim. *See id.*; *see also Justus*, 329 S.W.3d at 665. Guided by the supreme court's analysis in *Miranda*, we conclude that Sampson's claim is one of premise defect. Thus, Sampson failed to establish that the TCA waived immunity for his negligence cause of action and the trial court erred in denying the University's plea to the jurisdiction as to that cause of action. We sustain the University's second issue on this basis.[3]

**Premise and Special Defect Claims**

We next address the University's challenge to Sampson's claims that are based on a premise or special defect. *See* Tex. Civ. Prac. & Rem. Code § 101.022 (describing duty owed by governmental unit for special and premise defects).[4] Among its arguments in its first issue, the

---

[3] Because we conclude that Sampson is limited to asserting a premise liability claim, we need not address the University's argument that Sampson did not plead or prove a negligent use of tangible personal property by a paid employee of the University. *See* Tex. R. App. P. 47.1.

[4] Section 101.022 of the TCA reads:

(a)     Except as provided in Subsection (c), if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.

8

University argues that Sampson has not demonstrated a waiver of immunity for his claims based on a special defect and, as to his claims based on a premise defect, that Sampson has not offered any evidence that the University actually knew of a dangerous condition.

Whether a condition is a premise or special defect is a question of law. *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 238 (Tex. 1992) (op. on rehearing); *see Texas Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 866 (Tex. 2002) ("Whether a condition is a premise defect is a legal question."). "'Premise defects' may be defined generally as defects or dangerous conditions arising from conditions of a premises." *Davis v. Comal Cnty. Comm'rs Court*, No. 03-11-00414-CV, 2012 Tex. App. LEXIS 5719, at *6 (Tex. App.—Austin July 13, 2012, no pet.) (mem. op.) (citing *City of Weston v. Gaudette*, 287 S.W.3d 832, 836 (Tex. App.—Dallas 2009, no pet.)); *see also City of Houston v. Harris*, 192 S.W.3d 167, 173 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (noting that "courts have defined 'premises' as 'a building or a part of a building with its grounds or other appurtenances'" (citations omitted)). "Special defects" are a subset of premise defects and include "conditions 'such as excavations or obstructions on highways, roads, or streets.'"

---

(b)     The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060.

(c)     If a claim arises from a premise defect on a toll highway, road, or street, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property.

Tex. Civ. Prac. & Rem. Code § 101.022.

*Hayes*, 327 S.W.3d at 116 (citing Tex. Civ. Prac. & Rem. Code § 101.022(b)); *Davis*, 2012 Tex. App. LEXIS 5719, at *6.

a)      Special Defect

The University argues that Sampson's alleged condition is not sufficiently related to a road or street to be a special defect. Although a "special defect need not be on the surface of the road itself," the "condition must be sufficiently 'related to the street' to constitute a special defect." *City of Austin v. Rangel*, 184 S.W.3d 377, 383 (Tex. App.—Austin 2006, no pet.) (citation omitted). In his pleadings, Sampson alleges that the defective condition was an extension cord across a "pathway between a parking lot and the Law School." The evidence also included pictures of the walkway and a diagram of the layout for the tailgate event. Consistent with Sampson's pleadings, the evidence shows that the walkway is not adjacent to a road or street but that its path crosses the law school's grounds. Thus, we conclude as a matter of law that the alleged condition is not sufficiently related to a road or street to be a special defect. *See id.*; *see also Payne*, 838 S.W.2d at 238–39 (concluding that, "[i]f there was a defect, it was in the field where [the plaintiff] was walking," and that it was not a special defect).

Sampson argues that the University raises this argument for the first time on appeal. But, it was Sampson's burden to affirmatively demonstrate the trial court's jurisdiction to consider his special defect claim. *See Miranda*, 133 S.W.3d at 226. He failed to do so. Accordingly, the University's "duty of care with respect to such a defect was covered by the ordinary rule for premise defects under section 101.022(a)." *See Payne*, 838 S.W.2d at 238–39; *see also Hayes*, 327 S.W.3d at 115 (concluding as a matter of law that "metal chain blocking a driveway" was not a special

10

defect). On this basis, we conclude that the trial court erred in denying the University's challenge to Sampson's special defect claim.

b)      Premise Defect

Because Sampson does not allege that he was paying to use the premises, the University owed him "only the duty that a private person owes to a licensee" as to Sampson's claim based on a premise defect. *See* Tex. Civ. Prac. & Rem. Code § 101.022(a). "To establish a waiver of immunity for a premises-defect claim [under this standard], the plaintiff must show that the landowner failed to either (1) use ordinary care to warn a licensee of a condition that presented an unreasonable risk of harm of which the landowner is actually aware and the licensee is not, or (2) make the condition reasonably safe." *Hayes*, 327 S.W.3d at 117 (citing *County of Cameron v. Brown*, 80 S.W.3d 549, 554–55 (Tex. 2002)).

The University argues that Sampson has not established that the extension cord on the walkway was an unreasonably dangerous condition or that the University had actual knowledge of the alleged defect. The element of actual knowledge "requires the landowner to know 'that the dangerous condition existed at the time of the accident, not merely of the possibility that a dangerous condition c[ould] develop over time.'" *Id.* (quoting *City of Corsicana v. Stewart*, 249 S.W.3d 412, 413–14 (Tex. 2008) (per curiam) (quoting *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006) (per curiam))). "Hypothetical knowledge of a dangerous condition" is not actual knowledge. *Id.*; *see Thompson*, 210 S.W.3d at 604 (concluding plaintiff failed to present any evidence of city's "actual knowledge of the protruding coverplate"); *American Indus. Life Ins. Co. v. Ruvalcaba*,

64 S.W.3d 126, 142 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("Evidence of [owner]'s actual knowledge cannot be established by piling inference upon inference.").

We find instructive the Texas Supreme Court's analysis in *University of Texas-Pan American v. Aguilar*, 251 S.W.3d 511, 513–14 (Tex. 2008) (per curiam) and our sister court's analysis in *University of Texas at El Paso v. Muro*, 341 S.W.3d 1, 4–5 (Tex. App.—El Paso 2009, no pet.). In *Aguilar*, a student sued his university to recover damages alleging premises liability. 251 S.W.3d at 512. The University admitted to using water hoses on campus, and the student tripped on a water hose lying across a campus sidewalk. *Id.* Relying in part on guidelines from the University's safety manual, the court of appeals held that there was a fact issue regarding whether the University had actual knowledge that the water hose presented an unreasonable risk of harm. *Id.* at 513. The Texas Supreme Court reversed the court of appeals, concluding that there was "no evidence of the University's actual knowledge that the hose's use under these circumstances presented an unreasonable risk of harm." In reaching its decision, the court explained the inquiry for determining actual knowledge:

> Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger represented by the condition.

*Id.* at 514. The University's evidence included testimony that "there had been no incidents of pedestrians tripping on water hoses on the campus in the past five years" and "that there were no rules or guidelines for the use and placement of water hoses because they had never been a problem on campus." *Id.* As to the UT-Pan American safety manual, the supreme court concluded that

12

"nothing in the manual remotely suggests that a water hose can present an unreasonable risk of harm." *Id.*

In *Muro*, the plaintiff alleged that she was injured on campus when walking across a parking lot on her way to the football stadium. 341 S.W.3d at 2-3. She sued UTEP, asserting a premise defect claim under the TCA and alleging that she was injured when she tripped over the remnants of a metal sign post which was protruding from the paved surface. *Id.* The court concluded that the plaintiff failed to raise a fact question regarding UTEP's actual knowledge of the condition and, therefore, that she was unable to establish a waiver of sovereign immunity. *Id.* at 6. In its analysis, the court contrasted constructive and actual knowledge and noted that the "'actual knowledge' element . . . requires knowledge that the dangerous condition existed at the time of the accident" and that "circumstantial evidence [that] presents two equally plausible, but opposite inferences" is "legally no evidence at all." *Id.* at 4–6. There was testimony that UTEP maintenance crews "traditionally used" a technique that could have created the remnant but there was also "testimony that the remnant could have been created by an entity unrelated to UTEP." *Id.* at 5. The court concluded that one could infer from testimony that "UTEP did, or did not create the remnant" so that the testimony could not be the basis of a fact question. *Id.* at 5–6.

Even if we assume that Sampson's pleadings were sufficient to support the trial court's jurisdiction to consider his premise defect claim, the University presented evidence to support a finding that the University did not have actual knowledge of a condition on the walkway that presented an unreasonable risk of harm. *See Hayes*, 327 S.W.3d at 117; *Aguilar*, 251 S.W.3d at 513–14; *Muro*, 341 S.W.3d at 5–6. The University presented evidence that it did not place a cord

at the location of Sampson's injury and that it was unaware of a cord at that location, of any reports of falls or incidents in that area, or of problems with past events in that area. The burden then shifted to Sampson to present evidence to show that a disputed material fact existed regarding the University's actual knowledge. *See Miranda*, 133 S.W.3d at 228; *see also Harris*, 192 S.W.3d at 175 (concluding that after city introduced evidence that it did not have knowledge of prior accidents or complaints, it was the plaintiffs' burden to demonstrate a fact issue regarding the city's knowledge and that the plaintiffs "failed to do so").

Sampson urges that the evidence supports a finding that the University had actual knowledge because an employee of the University may have placed the cord across the walkway and, even if an employee of the third party placed the cord across the walkway, an employee of the University "'double checked' everything before the event and made sure that 'everything was fine.'" The evidence showed that University employees walked the site and discussed the set-up for the event with an employee from the third party before the event and that they observed the site after the lights had been installed. Sampson also presented evidence that: (i) the University would typically run the power from the electric outlet to wherever it was needed for this type of event, and (ii) at some point during the event, a cord was pulled out of its socket, and an employee of the University plugged it back in without investigating why it had been pulled out.

Sampson did not present evidence, however, that any University employee had actual knowledge of the cord and its location or condition in the time lead up to Sampson's fall or that it presented a dangerous condition. *See Muro*, 341 S.W.3d at 4–6. Based on Sampson's testimony and other evidence, the evidence was sufficient to create a fact issue as to whether he tripped over a cord

14

but, at best, the circumstantial evidence "creates nothing more than a mere suspicion" that the University was aware of a condition on the walkway that presented an unreasonable risk of harm, and "therefore, cannot be the basis of a fact question." *See id.*; *see also Hayes*, 327 S.W.3d at 117.

Further, Sampson did not present evidence to refute the University's evidence that it had not received prior reports of injuries or accidents or problems with past events in the area.[5] *See Aguilar*, 251 S.W.3d at 513–14; *see also Hayes*, 327 S.W.3d at 117–18 (observing that plaintiff "failed to demonstrate that the University had ever received prior reports of injuries or accidents at this location" and concluding that there was "no evidence showing that the University had actual knowledge of a dangerous condition at the time of the accident" despite observing that the University knew about the metal chain across driveway because University had erected it); *Harris*, 192 S.W.3d at 175. There also was no evidence that there had been problems with the use of extension cords on the University's campus. *See Aguilar*, 251 S.W.3d at 513–14. Further, the University employees' presence at the site prior to the event does not create a fact issue as to the University's actual knowledge of an unreasonable risk of harm. *See id.*; *Thompson*, 210 S.W.3d at 603 (concluding that "without evidence showing how long the alleged [defect] had existed, the proximity of the employees is no evidence of actual knowledge").

Guided by the analysis in *Aguilar* and *Muro*, we conclude that Sampson failed to present evidence to show that a disputed material fact exists regarding the University's actual knowledge of an unreasonable risk of harm and, therefore, that Sampson failed to establish the trial

---

[5] In his affidavit, Sampson testified that he had used "the same walkway between the parking lot and the law school on a nearly daily basis for over thirty years" and that he had "never before, and never since, encountered a cord strung across the walkway in that manner."

15

court's jurisdiction to consider his premise defect claim. On this basis, we sustain the University's first issue.

## CONCLUSION

For these reasons, we reverse the trial court's order and dismiss Sampson's claims for lack of subject matter jurisdiction.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin
    Dissenting Opinion by Chief Justice Jones

Reversed and Dismissed

Filed:   August 8, 2014